[Wolffe v. Wolff & Bro.]

# Wolffe v. Wolff & Bro.

69 549
108 257

*Action for Use and Occupation.*

1. *Landlord and tenant; effect of tenant's holding over after expiration of his term.*—Where a tenant for years holds over after the expiration of his term, the landlord may, at his option, treat him as a tenant and insist upon the continuance of his tenancy for another year; and if he .elect so to do, the law will imply an .agreement on the part of the tenant to hold .or continue the lease for another year upon the same terms and condi-tions.

2. *Same; when landlord's right not impaired by act of the tenant.*—In such case, the right of the landlord to insist upon the continuance of the tenancy, is not impaired by the tenant's refusal to renew the lease, or by notice to the landlord, that he had rented other premises, with the inten-tion to vacate within a few days, or by the fact that such other premises were not ready for him.

3. *Same; when a t'nant holds over a tender of quantum valebat not suf-ficient.*—Where a tenant who held under a prior lease for a term of one year, holds over for ten days after the expiration of his term, and after notice from the landlord that, if he persisted in holding over, he would elect to charge him as tenant for the next ensuing year, an obligation to pay rent for the whole year was thereby fastened upon him, and a tender by him of a mere *quantum valebat* for the period of actual occupancy, is not sufficient.

4. *Same; when tenant's liability not affected by second renting.*—In such case, the fact, that after the tenant had abandoned the possession of the leased premises, a party, who was the agent of the landlord, rented the premises to another for a part of the unexpired term, put him in posses-sion and collected the rents, not for and on account of the landlord, but "on account of whom it might concern," does not affect the original ten-ant's liability, when it is shown that such arrangement was made with the consent of both parties, and with the express understanding that it was to be without prejudice to the rights of either of them.

5. *Remedy against tenant holding over.*—Where a tenant for years holds over, and the landlord elects to treat him as tenant, an action for use and occupation arising from an implied *assumpsit*, will lie; or, *it seems*, the landlord may bring an action on the case for special damages.

APPEAL from Montgomery Circuit Court.

Tried before Hon. JOHN P. HUBBARD.

This was an action of *assumpsit* for the use and occupation of a certain store-house in the city of Montgomery, from the 1st October, 1879, to the 1st October, 1880; was brought by B Wolff & Bro. against Frederick Wolffe, and was commenced on May 10th, 1881. The defendant pleaded, in short by con-sent, the general issue, "with leave to give in evidence any mat-ter, which might be specially pleaded, including the right of defendant to prove on the trial, that before the 1st day of Oc-

tober, 1879, defendant gave notice to plaintiffs that he would not rent, nor otherwise hold the property mentioned and described in the complaint, for the rental year beginning on the 1st day of October, 1879, but that he, defendant, would surrender the same to plaintiffs at some early day during said month of October, and that he did accordingly surrender possession to plaintiffs, or their agents, and did vacate and quit said premises upon, to-wit: the 10th day of October 1879."

On the trial the plaintiffs introduced evidence showing that the defendant, in September, 1874, rented the premises mentioned and described in the complaint, by written contract, from Moses Bros., the plaintiffs' agents, for the term of three years, beginning on 1st October, 1874, and ending, October 1st, 1877, at an annual rent of eight hundred dollars, payable in equal monthly installments; that upon the expiration of this lease, it was verbally renewed until October 1st, 1878, and then again verbally renewed for the year ending September 30th, 1879, the defendant continuing to occupy the rented premises; that on 29th September, 1879, plaintiffs notified defendant that they had leased or rented said premises to one Abraham for one year to commence on 1st October, 1879, and demanded a surrender of the premises on the 1st October, 1879; that defendant, in reply, stated that he had leased in writing another store then in process of construction, but not completed, for a term of five years beginning on 1st October, 1879; that it would be impossible for him to vacate said premises on that day, but that he would do so at some early day during the month of October, and that he was ready to pay a reasonable and fair price for the use and occupation of said premises during his unavoidable occupancy thereof; and that on 30th September, 1879, the plaintiffs, through their agents, Moses Bros., notified the defendant in writing to surrender possession of the premises at the expiration of the current lease, and that in case of his failure to do so, the plaintiffs would hold him responsible as having renewed his present lease on same terms for another year, commencing October 1st, 1879; and to this the defendant made the same reply, in substance, that he made to the first notice. The plaintiffs' evidence also showed that the defendant occupied said premises until 10th October, 1879, when he vacated and quit them, and tendered the keys to plaintiffs' said agents, Moses Bros., who refused to receive them; that the plaintiffs had rented the premises to one Abraham for one year to commence on 1st October, 1879, and that he refused to take the premises when the defendant failed to vacate on that day; that Moses Bros., on 15th November, 1879, rented the premises "for the balance of the said rental year, with the consent and knowledge of both plaintiffs and defendant; and without prejudice to the

rights of either party, 'on account of whom it might concern,' to one Simon Hertz," at a given price; that Hertz remained in the store only a part of the year, and then failed in business, abandoned the premises and left Montgomery; that they only collected from Hertz $180, which they still held "on account of whom it might concern;" that in renting the store to Hertz they did not act as the agents of either the plaintiffs or defendant; and that after Hertz left, the premises remained unoccupied during the balance of the unexpired term.

The defendant offered proof showing that in June, 1879, he rented, by written contract duly executed, for a term of five years, commencing on 1st October, 1879, another store in the City of Montgomery, and that unavoidably the store was not ready or fit for occupancy on 1st October; but the court, on plaintiffs' objection, refused to allow the defendant to make the offered proof, and he excepted. He then "proved that he occupied the said premises only until the 10th day of October, 1879, and then tendered the keys thereof, in good faith, to said agents of plaintiffs, Moses Bros., who refused to accept the same;" and that "he emphatically refused to rent the said premises of plaintiffs for another rental year, commencing October 1st, 1879, or otherwise to hold, or occupy, control, or have any connection, in anywise or manner whatever, with the said premises any longer than, or after the 10th day of October, 1879—up to which last named day" the other store which he had rented was not in a fit condition to be occupied by him. Defendant then offered to prove that, in the latter part of October, 1879, he tendered plaintiffs $50 for the use and occupation of their said premises for the ten days in October during which he had occupied them; but, on plaintiffs' objection, the court refused to allow the defendant to make the offered proof, and he excepted.

The foregoing being the substance of the evidence introduced on the trial, "the court, ex mero motu, charged the jury, that, if the jury believe from the evidence, that there was a contract of renting of the premises mentioned in the complaint between plaintiffs and defendant, for the rental year ending September 30th, 1879; that plaintiffs on said last mentioned day demanded possession thereof of the defendant, and he refused·to surrender such possession, but continued to occupy said premises until the 10th day of October, 1879, then the plaintiffs had the right to treat the defendant as having renewed his lease for another year; and plaintiffs would be entitled to recover in this case one year's rent, at the rate of eight hundred dollars per annum, with the interest thereon from the 1st day of October, 1880." To this charge the defendant excepted.

The court, at the written request of the plaintiffs, gave to the jury the following charge, and the defendant excepted, to-

wit: "That if the jury find from the evidence that the renting in November, 1879, was to Hertz 'on account of whom it might concern,' and that B. Wolff & Bro. and Fred. Wolffe assented that Moses Bros. might rent to Hertz in that way, without affecting the rights of either party, then such renting would not prevent the plaintiffs from recovering in this suit for the year commencing on 1st October, 1879, and ending on 1st October, 1880."

The defendant then requested the court to give to the jury the following written charges: 1. "If the jury believe from the evidence that the defendant, on the 10th day of October, 1879, tendered to plaintiffs, or their agents, the keys to the premises described in the complaint, and had at that time vacated and quit the premises, then the measure of damages is the actual rental value of the premises from the 1st day of October, 1879, to the time such keys were tendered." 2. "If the jury believe from the evidence that Moses Bros. rented the premises in controversy on or about the 15th of November, 1879, to one Simon Hertz, for fifty dollars per month, for the balance of the rental year, ending October 1st, 1880, payable monthly, and that the plaintiffs agreed to said renting and accepted said tenant, Hertz, then the plaintiffs can not recover damages for the occupation and use of said premises, in this case, for a period of time longer than said 15th day of November, 1879; and the measure of damages is the rental value of the premises from the 1st day of October, 1879, to the time said premises were leased to Hertz, as aforesaid." 3. "If the jury believe from the evidence that the defendant, in September, 1874, rented the premises mentioned and described in the complaint, from Moses Bros., as agents of plaintiffs, under a written lease or contract of renting, for a period of three years, beginning on the 1st of October, 1874, and ending October 1st, 1877, at the sum of eight hundred dollars *per annum*, payable monthly; and that, upon the expiration of said written lease, defendant continued to occupy the premises at the same rent *per annum*, and payable monthly, and no other written lease was made and executed between the parties, and that defendant refused to occupy or hold said premises longer than the 10th of October, 1879, then plaintiffs can not recover damages in this case, except for the time said premises were actually occupied by defendant, to-wit: to the 10th day of October, 1879, when the premises were vacated by him; and the measure of damages will be the rental value of the property from the 1st of October, 1879, to the time defendant quit the said premises." 4. "If the jury believe from the evidence that the defendant, in September, 1874, rented the premises described in the complaint in this case, from Moses Bros., as agents of the plaintiffs, under a written lease,

[Wolffe v. Wolff & Bro.]

or contract of renting, for a term of three years, to begin on the 1st day of October, 1874, and to end on the 1st of October, 1877, at and for the price or sum of eight hundred dollars *per annum*, payable in monthly installments; and that upon the expiration of said written lease, defendant continued to occupy the premises at the same rent *per annum*, payable monthly, and under no other contract of renting; and that defendant refused to renew his contract of renting for another year, then the plaintiffs can not recover damages in this case, except for the time the said premises were actually occupied by the defendant, to-wit: to the 10th day of October, 1879, the time when the defendant vacated said premises; and the measure of damages will be the rental value of the said premises from the 1st day of October, 1879, to the time the defendant quit the said premises."

5. "If the jury believe from the evidence that before the expiration of the renting, ending September 30th, 1879, the plaintiffs, or their agents, were notified by defendant that he would not rent, or otherwise hold the premises of plaintiffs longer than for a few days in October, and only until the ground floor of the Tyson building, on Commerce street, in the city of Montgomery [the other store which the defendant had rented], was fit for occupancy by him; and if the jury further believe from the evidence that defendant did not hold said premises after the 10th day of October, 1879; that on that day he tendered the keys of said premises to the plaintiffs' agents, in good faith, then the defendant is not liable for the rent of said premises for the rental year beginning October 1st, 1879, at the rate of rent which had been agreed on between them as the rent of the previous year."    These charges the court refused to give, and the defendant separately excepted.

The trial resulted in a verdict and judgment for the plaintiffs for $904.45, from which the defendant appealed; and he here assigns as error the rulings of the Circuit Court above noted.

Rice & Wiley, for appellant.

Watts & Sons, *contra.*

(No briefs came to the hands of the reporter.)

SOMERVILLE, J.—The principle is too well established for further controversy, that, where a tenant for years holds over after the expiration of his term, the law will imply an agreement to hold, or continue the lease, for another year, upon the terms and conditions of the prior lease.    It is the duty of a tenant, so soon as the period of his tenancy expires, to peaceably surrender the possession of the demised premises to his land-

lord, and if he neglects or refuses to do so, the landlord may treat him either as a *trespasser*, or as a *tenant*, according as his own option may dictate.—Taylor's Landlord and Tenant, § 22; *Schuyler v. Smith*, 51 N. Y. 309 (S. C., 10 Amer. Rep. 609); 4 Wait's Act. and Def. 218, § 5.

In all such cases, where there is a holding over by the tenant, the right of the landlord to insist upon the continuance of the tenancy is, in no wise, affected by the fact that the tenant refuses to renew the lease, and gives notice that he has rented other premises with the expressed intention to vacate within a few days. The tenant can not be permitted to enjoy the benefits of continued possession, and at the same time capriciously repudiate the attendant burden of paying just and reasonable rent. Though he may expressly refuse to promise, the law raises such obligation on his part by necessary implication, if the landlord elects to still regard him as a tenant.—*Schuyler v. Smith*, 10 Amer. Rep. 609, *supra;* Taylor's Land. and Ten. § 22; *Hemphill v. Flynn*, 2 Barr (Penn.), 144; *Bacon v. Brown*, 9 Conn. 334; *Noel v. McCrory*, 7 Cald. (Tenn.) 623; *Harkins v. Pope*, 10 Ala. 493; *Schuisler v. Ames*, 16 Ala. 73.

In the case of *Witt v. The Mayor of New York*, 5 Robert. (N. Y.) 248 (S. C., 6 Robt. 441), the tenants gave notice to their landlord that they had hired other premises, and expressly declined another year's tenancy. They held over *twelve days*, during which time they were engaged in effecting a removal. They were adjudged to be liable for another year at the election of the landlord. A similar ruling was announced in *Conway v. Starkweather*, 1 Denio (N. Y.), 113, where the tenant held over without authority for the space of *two weeks*, and it was held to be immaterial that the tenant gave notice that he had hired other premises, and communicated to the landlord his determination not to hold over another year.

The form of action in such cases, it seems, may be either for use and occupation, arising from an implied *assumpsit*, or an action on the case for special damages.—*Bramley v. Chesterton*, 2 Common Bench Rep. N. S. 592; *Crommelin v. Thiess & Co.*, 31 Ala. 412.

Under these principles, we can see no error in the rulings of the Circuit Court as appearing in the record. The appellant had been the tenant of the appellees for several years prior to October 1, 1879, holding from year to year. He had timely notice that the premises in controversy had been leased to another tenant for the following year, and that he was required to vacate by the first of October, 1879, which was the day of the expiration of his tenancy. It was his fault, not the fault of his landlords, the appellees, that he was unavoidably prevented from moving by the incomplete condition of the premises which

[Shipman v. Furniss.]

he purposed to occupy for the ensuing year. His holding over for *ten days* fastened on him an obligation to pay rent for the whole year, and it was not sufficient to tender a mere *quantum valebat* for the period of actual occupancy, especially in view of the fact that the appellees had expressly notified him that, if he persisted in holding over, they would elect to charge him as a tenant for the next ensuing year. And it is further manifest that, by reason of this act on the part of appellant, the appellees lost the opportunity of obtaining a tenant, as they might otherwise have done.

The renting of the premises *ad interim* by Moses Bros. to Hertz, "on account of whom it might concern," did not affect the merits of this case. It was done with the consent and knowledge of both parties, to the suit, and was understood expressly to be without prejudice to the rights of either party.

The judgment of the Circuit Court must be affirmed.