# King, et al. v. Robinson.

### Assumpsit.

(Decided May 14, 1912. 59 South. 371.)

1. *Landlord and Tenant; Tenancy From Year to Year.*—Where a person who had been for several years a yearly tenant of premises, formed a partnership, and the firm succeeded to the business and continued after the expiration of the year to occupy the premises, the landlord could treat the occupancy of the firm as a tenancy from year to year, in the absence of any agreement to the contrary, or of any act by the landlord causing the tenant to abandon the premises before the expiration of the year.

2. *Same.*—The facts in the case stated, and under them it is held that the partners were, as a matter of law, tenants for a year, and that they were liable for the rent after they moved out.

3. *Same; Holding Over; Right of Landowner.*—Where there is a holding over by a tenant from year to year, the landlord's right to insist upon the continuance of the tenancy for a year is not affected by the tenant's refusal to renew the lease, and the giving of notice that he expects to vacate within a few days, for the law raises an obligation of tenancy for a year.

4. *Trial; Verdict; Nature.*—A verdict is never a verdict until it is affirmed by the jury in open court, and where the jury reached an agreement after the adjournment of the court, they may obtain leave to give their verdict privily, but it is never a verdict until affirmed in open court.

5. *Same.*—Where the jury delivered their verdict to the sheriff during an adjournment of the court, and after the convening of

the court, the jury took their places in their box, and in the presence of the court, and of the parties formally announced their verdict, the verdict was affirmed in open court.

6. *Same; Direction to Jury as to Reconsidering Their Verdict.*—A trial judge may properly direct the jury to retire and reconsider their verdict.

7. *Appeal and Error; Reconsidering Verdict; Questions Reviewable.*—Where the court refused to receive a verdict and directed the jury to retire and reconsider their verdict, and bring in a verdict for plaintiff instead of defendant, and the verdict as finally returned was accepted by the court, the action of the court was not reviewable on appeal in the absence of objection and exception.

APPEAL from Tallapoosa Circuit Court.

Heard before Hon. S. L. BREWER.

Action by Mrs. R. S. Robinson against J. O. King and another. Judgment for plaintiff and defendant appeals. Affirmed.

GEORGE A. SORRELL, for appellant. The court erred in giving the affirmative charge for the plaintiff.— *Rhodes F. Co. v. Weedon & Dent,* 108 Ala. 252. The affirmative charge should never be given where there is a conflict in the evidence on material facts, as in this case.—*L. & N. R. R. Co. v. Lancaster,* 121 Ala. 471. In his action as to the verdict, the court invaded the province of the jury.—*Davidson v. State, ex rel.,* 63 Ala. 432; *Woolf v. Delage,* 150 Ala. 445.

BRIDGES & OLIVER, and J. W. NOLEN, for appellee. On the facts in this case, there was a tenancy from year to year and plaintiff was entitled to recover for a part of the year, for which the premises were abandoned.— *Woolf v. Woolf,* 69 Ala .549; *Rhodes & Co. v. Weedon,* 108 Ala. 252. Their denial of such renting created no material conflict in the evidence, and did not require a submission of that fact to the jury.—*Peters v. So. Ry. Co.,* 135 Ala. 540. If there was any error committed by the court relative to the verdict, it was waived when no

objection or exception was interposed thereto.—*Sewell v. The Bank,* 119 Ala. 92; *Oliver v. Herron,* 106 Ala. 639; *Caldwell v. The State,* 56 South. 12. Counsel discuss the bill of exceptions in the light of sections 3016 and 3018, Code 1907, and insist that the question here presented cannot be reviewed.

DE GRAFFENRIED, J.—Mrs. R. S. Robinson, the appellee, brought this suit against the appellants, J. O. and G. W. King, to recover an alleged balance due her by them for the rent of a certain storehouse in Alexander City for the year commencing on September 1, 1908, and ending on September 1, 1909. The evidence discloses that Mrs. Robinson is the mother of Elbert Robinson, who was a merchant, and was, at one time, an occupant of said store as his mother's tenant by the year. He paid, as rent, $15 per month at the end of each month, but he was a tenant not by the month but by the year. Elbert Robinson sold his stock of merchandise to J. O. King, one of the appellants, a few years before the commencement of this suit, and J. O. King continued the business in said store not as a monthly but as a yearly tenant. On this subject J. O. King testified that he "never did have any contract with plaintiff or with J. A. Robinson [the plaintiff's husband and agent in the management of the property] as her agent for the rent of this store building. I just bought out Elbert Robinson and went into the possession of the stock of goods bought of him, together with the house, and paid the rent by the month each year, taking Elbert Robinson's contract for the storehouse and lot from September to September." It appears that some time in the summer of 1908—probably in August—the said J. O. King associated his brother, G. W. King (the other appellant here), with him in the business, and

28 CA

that the business was continued in said store under
the firm name and style of J. O. & G. W. King, the firm
paying the monthly rental at the end of each month to
appellee, until January, 1909. After January 1, 1909,
the store was vacant and remained vacant until Sep-
tember 1, 1909, and as appellants refused to pay the
appellee any rent for any month subsequent to Decem-
ber, 1908, this suit was brought to recover the rental
for said store for the period intervening between Janu-
ary 1, 1909, and September 1, 1909.

It appears from the undisputed evidence that from
September 1, 1908, to January 1, 1909, the appellants
remained in the undisturbed possession of said store
and paid the monthly rent therefor just as had been
done during the preceding years. It further appears
that some time in December, 1908, appellants bought a
stock of merchandise from one Moon, and that when
this was done they immediately moved their stock of
goods from appellee's store into the Moon store and
continued the business in the Moon store from that
time on. On the subject of what occurred when the
goods were removed from appellee's store, appellee's
husband, who was her agent authorized to attend to the
matter, testified that the first thing he "knew that they
were not going to occupy the house was when they
bought out the A. L. Moon stock about the latter part
of December, 1908, and commenced to move the goods
out of the house that I had rented them, into the build-
ing formerly occupied by A. L. Moon. J. O. King told
me, when I asked him what it meant, that they had
bought the A. L. Moon stock of hardware, and was mov-
ing into the store formerly occupied by A. L. Moon, and
that they would not need the house I rented them any
longer." The evidence further shows, without conflict,
that the appellants, when they left the store, locked it

up and kept the keys until the following September; that there was a small house, which formed a part of the store, in which the appellants kept some wire stored; and that they did not remove this wire from this house until some time during the year 1909. We desire to say, however, that, in view of the testimony of the appellants, to which we will refer hereafter, we attach but little importance to this latter testimony.

As J. O. King, one of the appellants, had, for several years, been a yearly tenant of appellee, and as the partnership of J. O. & G. W. King simply succeeded to the business of J. O. King and the business of the partnership was continued *after* September 1, 1908, in the store of appellee, under the law appellee had a right to treat the continued occupancy by the partnership of her store as a tenancy for another year, and such was the situation between the parties unless there was an agreement to the contrary.—*Rhodes Furniture Co. v. Weeden & Dent,* 108 Ala. 252, 19 South. 318.

If the above was the real situation of the parties, then the appellee is entitled to her rent for the entire year. Confessedly appellee treated the term as for a year and did nothing to cause appellants to abandon the premises before the expiration of the year.—*Rhodes Furniture Co. v. Weeden & Dent,* 108 Ala. 252, 19 South. 318.

It appears from the evidence, without dispute, that in the latter part of August or the first part of September, 1908, after the above partnership had been formed by the appellants, the appellants and the appellee, through her husband, had a talk about the rental of the store for the next year, and there was evidence tending to show that it was agreed between them that the rent to be paid should be $17.50 per month instead of $16 per month as formerly; but on this latter subject there

was a dispute in the testimony. It is evident, from all the evidence, that the term of the rental discussed between all of the parties in that conversation was, not for one month, or from month to month, but for a full year. In order that the evidence on the subject of the rental may be stated in the light most favorable to appellants, we quote the testimony of J. O. King on the subject. He said that Robinson "would usually come around about the 1st of September and talk with me about the rent of the place, and tell me the *price* I would have to pay for the place the *next year*. Storehouses in Alexander City usually rent from *September* to *September*. I did not make *any contract* prior to September, 1908, or at any time, with John A. Robinson for the rent of the storehouse from September 1, 1908, to September 1, 1909. I did have a *conversation with him* during the *month of August* or the *first of September,* 1908, about renting the house. I told him that my brother had bought an interest in the business; that we were going to increase our stock; that the room we were then occupying was too small to hold our stock of hardware; that we would not rent the house *for another year* unless we could get more room, but if he would arrange to get the room adjoining the one occupied by us, and that was then being used by W. E. Rush as a meat market, that we would take *both* rooms and still remain where we were. He told me to stay on in the house that we were in, and he *thought* that Mr. Rush would not *continue in business very long* and that he would be able to get the room occupied by Rush for us. After this conversation, we remained on in the room that we had been occupying and kept our hardware in there until the latter part of December, 1908, when we bought out A. L. Moon's hardware business in Alexander City and moved our stock of goods from the

building formerly occupied by us and belonging to the plaintiff into the building occupied by A. L. Moon. I had several conversations with Mr. Robinson about getting the room occupied by Rush, and he told me each time that he would try to get it for us and thought that he could do so. I did not say anything to him about *moving out* until we had *partly moved.* He met me on the street and asked me what it meant, and I told him that we could not use the place where we had been because, *as I had previously told him,* it was not large enough, and that we were moving out."

When it is remembered that the appellee's husband and appellants in the above conversation were discussing the question as to whether the appellants would retain the house, *not for a month,* or *a limited period,* but *for a year,* and that the appellants *remained* in the house, not by virtue of an agreement on the part of appellee's husband that he *would* let them have the Rush room, but that he *thought* he could do so, and that he would *try to do so,* it is evident that appellants, when they held over, under such circumstances, after September 1st, were bound to retain the store and pay the rent for another year at appellee's election.—*Wolffe v. Wolff & Bro.,* 69 Ala. 549, 44 Am. Rep. 526. If appellee had agreed that, if appellants would keep the store, she *would* let them have the Rush room, instead of that she *thought* she could do so, an entirely different conclusion could be reasonably drawn from the evidence. When appellee's husband said to appellants: "Stay on in the house that you are in and I will try to get you the Rush room. I do not think he will continue in business very long. I think I can get you his room"—the period under discussion was a year, and as the appellee did nothing to mislead appellants and made no contract with appellants that she *would* deliver to them the

Rush room, we can see no reason why the appellants' holding over, under the circumstances, did not amount, in law, to a renewal of the yearly contract.

There was no offer on the part of appellants—and none is claimed—to surrender possession on September 1st. There is no evidence tending to show that they would have done so, or that they intended to do so. "In all such cases, where there is a holding over by the tenant, the right of the landlord to insist upon the continuance of the tenancy is in no wise affected by the fact that the tenant refuses to renew the lease and gives notice that he expects to vacate the premises within a few days. Though he may expressly refuse to promise, the *law* raises such obligation on his part by necessary implication, if the landlord elects to still regard him as a tenant."—*Wolffe v. Wolff & Bro., supra.* The plain truth about this matter is—and no other reasonable conclusion can be drawn from the evidence—that the appellants did not deliver and did not intend to deliver to appellee the possession of the store on the 1st of September. They *probably thought* that, unless they expressly bound themselves to keep it for a year, they could abandon it at pleasure; but the law fastened upon their acts in keeping the store a rental for a term of one year, and there is no evidence from which a *reasonable* conclusion can be drawn that appellee said or did anything estopping her from claiming the rights which the law, on account of such holding over, conferred upon her.—*Wolffe v. Wolff & Bro., supra.*

We agree with counsel for the appellants that the court had no authority to direct the jury as to the character of the verdict which they should render in this case. A verdict is not a verdict until it is affirmed by the jury in open court. "Where the jury reaches an agreement after the judge has left or adjourned the

court, they may, in order to be delivered from their confinement, obtain leave to give their verdict privily to the judge out of court. And to be of any force such verdict must be affirmed by a public verdict in open court. The only effectual and legal verdict is the public verdict, in which the jury openly declare to have found the issue for the plaintiff or for the defendant."—29 A. & E. Ency. Law, 1044, and authorities cited.

Of course, if the parties to this cause had elected to treat the delivery by the jury to the sheriff of their verdict as the *final* action of the jury, and the verdict, without a reimpaneling of the jury, had been received by the court and entered in the minutes of the court as the verdict of the jury, no one would, after this had been done, have been heard to complain. When, however, upon the reassembling of the court, the jury again took their seats in the jury box, and the sheriff handed back to the jury the papers in the case, in the presence of the court and of the parties to the cause, and the jury, in open court, formally announced the result of their deliberations, the formalities of law in regard to the reception of verdicts were in all things properly observed. When, however, a jury returns into court with a verdict, *that verdict* does not become in fact a verdict until it is received by the court. Until the court receives it the case remains with the jury.

In the case of *Reg v. Meany,* 1 Leigh & C. 213, 9 Cox C. C. 231, Pollock, J., said: "A judge has a right, and in some cases it is his bounden duty, whether in a civil or a criminal cause, to tell the jury to reconsider their verdict. He is not bound to receive their verdict unless they insist upon his doing so."—Proffatt on Jury Trial, § 458.

While, in England, judges possess much greater powers over juries than in Alabama, nevertheless, in Ala-

bama, when the circumstances justify it, a trial judge may tell a jury to retire and reconsider their verdict.

In the present case, the court declined to receive the first verdict of the jury and had them to retire and reconsider their verdict. The appellants were present and made no objection and reserved no exception to this action of the court. The court *directed* the jury, when they retired, in substance, to reverse their findings on the facts and to bring in a verdict for the appellee instead of for the appellants. Any question as to the propriety of the action of the trial court in this regard is not before us, as the appellants made no objection to this action of the court. As the verdict of the jury only became a *legal verdict* when it was accepted by the court, there was no verdict in this case until the jury returned into court with the verdict which was accepted by the court and entered on its minutes. As the appellants, by seasonable objections and exceptions, failed to reserve for our consideration, in the manner provided by law, any question as to the action of the trial court in relation to this matter, we have no authority to review its action in that regard.—*Cardwell v. State,* 1 Ala. App. 1, 56 South. 12.

For the reasons above announced, we are of the opinion that the judgment of the court below must be affirmed.

Affirmed.