ELIZABETH J. HAYNES, Respondent, *v.* ELIZABETH W. ALDRICH, Appellant.

Where a tenant for a year or years holds over after the expiration of his term, the law implies an agreement on his part to hold for another year upon the terms of the lease, and the option is with the landlord to so regard it; and this, although he had notice from the tenant before the expiration of the term that he did not intend to remain for another year, at least where the holding over was not unavoidable.

Defendant leased certain premises of plaintiff for a year. The lease contained a provision that the premises should be occupied as a private dwelling and a covenant on defendant's part not to sublet without the written consent of plaintiff. Defendant did sublet without permission to C., who occupied the premises as a boarding-house. The term expired May first; before the expiration, defendant informed plaintiff that she did not desire to renew her lease for another year. The first day of May was a holiday. Possession was retained by the sub-tenant until May fourth, the excuse being the difficulty in engaging trucks on the second, and that on the third, one of the boarders was sick and could not then be moved with safety. In the afternoon of the fourth, the keys were tendered to plaintiff, but refused. In an action to recover rent, *held*, that plaintiff was entitled to consider the lease renewed for another year. *Smith* v. *Allt* (7 Daly, 492), distinguished.

Plaintiff went to the house on May fourth, after the tender of the keys, and found it deserted and the windows open; a policeman entered through an open window; some keys were found which were thereafter

used, and plaintiff had some ordinary and needed repairs made. She also tried to rent the premises, but failed. Plaintiff had the right under the lease to enter to make repairs, and in case the premises became vacant during the term, to enter and relet as defendant's agent. *Held,* that there was no acceptance of the surrender.

(Argued April 18, 1892; decided May 24, 1892.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made July 31, 1891, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court and also affirmed an order denying a motion for a new trial.

This was an action to recover the rent for one year of certain premises in the city of New York.

The facts, so far as material, are stated in the opinion.

*Henry Galbraith Ward* for appellant. The question whether the conduct of Mrs. Coventry, the sub-tenant, amounted to a holding over by Mrs. Aldrich, the defendant, was a question for the jury. (*Smith* v. *Allt,* 7 Daly, 492; *Shanahan* v. *Shanahan,* 28 J. & S. 339; *McCabe* v. *Evers,* 30 N. Y. S. R. 833; *Manly* v. *Clemens,* 34 id. 199.)

*Stephen H. Olin* for respondent. The defendant was bound to give up possession of the leased premises at the expiration of the term. (*Schuyler* v. *Smith,* 51 N. Y. 309; *Hazeltine* v. *Weld,* 73 id. 156; *Philip* v. *Fogarty,* 21 Abb. [N. C.] 304; *Lubetkin* v. *E. B. Co.,* 21 id. 304; *Laughran* v. *Smith,* 75 id. 205; *Laimbeer* v. *Tailer,* 4 N. Y. Supp. 588; *Hunt* v. *Wolfe,* 2 Daly, 248; *Witt* v. *Mayor, etc.,* 5 Robt. 248; *Mack* v. *Burt,* 5 Hun, 28; *Schuyler* v. *Smith,* 51 N. Y. 309; *Gibbons* v. *Dayton,* 4 Hun, 451; *Smith* v. *Allt,* 7 Daly, 492, 496.) The holding over was not excusable and involuntary. (*Witt* v. *Mayor, etc.,* 5 Robt. 248; *Smith* v. *Allt,* 7 Daly, 492; *Tommey* v. *Dunn,* 10 J. & S. 291.) The acts of the plaintiff, which were claimed to be a resumption of possession and an exercise of proprietary right, are not sufficient to sustain the defendant's claim that there was a surrender and an accept-

ance of the surrender. (*Winant* v. *Hines*, 14 Daly, 187; *Spies* v. *Voss*, 30 N. Y. S. R. 548; *McKellar* v. *Sigler*, 47 How. Pr. 20; *Thomas* v. *Nelson*, 69 N. Y. 118, 121; *Morgan* v. *Smith*, 70 id. 537, 546; *Hall* v. *Gould*, 13 id. 127; *Hackett* v. *Richards*, 13 id. 138.)

FINCH, J. Judgment was ordered against the defendant upon the trial of this action for rent accrued after the expiration of her original lease, upon the ground that by holding over after such expiration, she became a tenant for another year upon the terms of the prior written lease. The facts disclosed were that such lease ended by its terms on May 1, 1889; that it contained a provision that the premises should be occupied as a private dwelling, and a covenant not to sublet without the written consent of the lessor. Both stipulations were violated. The tenant, without permission, rented the premises to Mrs. Coventry, who occupied them as a boarding-house, and received, as one of her boarders, a lady who was a chronic invalid and continuously ill. On the 4th of February, 1889, the lessor inquired of the lessee whether she desired to renew her lease for another year, and was informed that she did not. The first day of May was a holiday, and possibly the tenant had until noon of the next day for a surrender of possession. But the possession was retained by the tenant until the afternoon of May fourth, when the keys were tendered, but refused. The excuse given is that on the second day of May, there was difficulty in engaging trucks; that the removal began on the third, but the sick boarder could not then be moved with safety, and was not moved until the fourth.

This court held in *Commissioners of Pilots* v. *Clark* (33 N. Y. 251), that the rule is too well settled to be disputed that where a tenant holds over after the expiration of his term the law will imply an agreement to hold for a year upon the terms of the prior lease; that the option to so regard it is with the landlord and not with the tenant, and that the latter holds over his term at his peril. In *Conway* v. *Starkweather* (1 Den. 114), the tenant had notified the landlord of his inten-

tion not to remain for another year, as was the fact in the present case, but, nevertheless, did hold over for a fortnight, and the fact of the notice was held to be immaterial, the court saying, "the act of the plaintiff in holding over has given the defendants a legal right to treat him as tenant, and it is not in his power to throw off that character, however onerous it may be."

The appellant does not deny the rule but seeks to qualify it so as to mean that it is only where the tenant holds over voluntarily and for his own convenience that the landlord's right arises, and that it does not so arise when the tenant holds over involuntarily, not for his own convenience, but because he cannot help it. I am averse to any such qualification. It would introduce an uncertainty into a rule whose chief value lies in its certainty. The consequent confusion would be very great. Excuses would always be forthcoming, and their sufficiency be subject to the doubtful conclusions of a jury, and no lessor would ever know when he could safely promise possession to a new tenant. The cases cited by the appellant do not bear out his contention. In *Smith* v. *Allt* (7 Daly 492) the holding over was in part the act and assent of the landlord and occasioned by pending negotiations, and could not have been said to be the sole act of the tenant. In *Shanahan* v. *Shanahan* (53 J. & S. 344) it appeared that the first of May was Sunday, that the tenant began to move on the afternoon of the second, that the removal continued during the third, and for that reason the tenant was held liable. The court did interject the remark that there was no unavoidable delay in moving, but without seeking to change or modify the rule. In *McCabe* v. *Evers*, decided in 1890 in the New York City Court, it appeared that the tenant moved out on the first of May, but left behind him an old stove and some rubbish, and tendered the key on the second of May. The court held that the evidence of a holding over was inconclusive and ambiguous, and the question should have been submitted to the jury. In *Maney* v. *Clemens*, decided by the same court, the term expired on February second, at noon; the tenant began his removal in

the morning and worked till midnight.   There was a verdict against the landlord which the court refused to set aside.

These cases, even if regarded in all respects as correctly decided, fall very far short of establishing the appellant's doctrine or justifying a reversal in the present case.   There is no question here about the fact of a holding over, and no question, therefore, in that regard for the solution of a jury.   The tenant remained in possession voluntarily, for her own convenience and that of her sick boarder.   If it was unsafe to remove the latter the situation was wholly the fault of the tenant who sets up as an excuse for one violation of the lessor's rights the consequences of her own earlier violation of the terms of the lease. No impossibility of removal was shown, merely difficulty and inconvenience, which should have been and might have been foreseen and provided against.   If the rule in this case seems to involve a hardship, that is sometimes true of every general rule, however just and wise, but does not justify its abrogation. To sustain this defense would open the door to a destruction of the settled doctrine and tend to involve the rights of both lessor and lessee in uncertainty and confusion.

I do not mean to say that whether there has been a holding over at all may not sometimes be so doubtful upon the facts as to require a submission to the jury.   I mean to say that there is no such doubt in the present case.   I reserve the question, also, whether there might not be an unavoidable delay, in no manner the fault of the tenant, directly or indirectly, which would serve as a valid excuse.   It is enough that here was a holding over not unavoidable, which might have been provided against, and where the chief difficulty grew directly out of the tenant's own wrongful act.

It is claimed, however, that the further question whether the lessor exercised the permitted option or took possession in her own right, should have been submitted to the jury.   I think the facts admit of but one inference.   The lessor did exercise her option, and that promptly and clearly.   When the keys were tendered to her mother they were refused.   In the afternoon of May fourth the lessor went to the house to see what

was occurring. She found it deserted and the windows open. Her property needed protection. Under the lease she had a right to enter and relet it as the agent of the tenant. A policeman entered through the open window. Some keys were found on the mantel and thereafter used, but evidently not all, for others were restored much later. The premises were somewhat damaged and the lessor had a little painting and some plumbing done, amounting only to ordinary and needed repairs. She tried to rent the house but failed, and went to Europe during the summer, and occupied the house in the fall under a stipulation which expressly reserved her existing rights. Upon these facts no inference was justified, except that drawn by the court. There was a clear refusal to accept the surrender offered and the repairs were consistent with that position and with the right reserved in the lease.

We think the judgment was correct and should be affirmed, with costs.

All concur.

Judgment affirmed. _____