ALBERT HERTER, Respondent, *v.* JEREMIAH J. MULLEN and THOMAS MULLEN, Appellants.

1. LANDLORD AND TENANT — RETENTION OF POSSESSION CAUSED BY SICKNESS IS NOT A HOLDING OVER. If a tenant, intending to remove on the expiration of his term, is prevented by being obliged to retain a room in the house for a few days on account of the sickness of a member of his family, it is not a holding over within the meaning of the rule which permits the landlord to continue the lease and recover rent for another year.

2. OMISSION TO SURRENDER PREMISES EXCUSED BY IMPOSSIBILITY OF REMOVAL. If the tenant's removal at the expiration of his term is rendered impossible by inevitable accident or the act of God, he is excused for his omission to surrender the premises, at least so far as it creates a liability for a year's rent which is implied by law.

*Herter* v. *Mullen*, 9 App. Div. 593, reversed.

(Argued March 23, 1899; decided April 18, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered

November 12, 1896, overruling defendants' exceptions, ordered to be heard in the first instance by the Appellate Division, and directing judgment in favor of plaintiff upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Bernard J. Tinney* for appellants. The holding over was unavoidable and in no manner the fault of the tenant. It could not be avoided, and for it defendants are not liable as hold-over tenants for another year, as held by the court below. (*Haynes* v. *Aldrich*, 133 N. Y. 291; McAdam on Landl. & Ten. [2d ed.] 33, § 21; *Greaton* v. *Smith*, 1 Daly, 386; *Tuomey* v. *Dunn*, 10 J. & S. 291; *Jones* v. *Spears*, 4 Ad. & El. 832; Chitty on Cont. [8th ed.] 286, 287.) The defendants, being prevented by the act of God from removing from the demised premises, are not liable. (*People* v. *Tubbs*, 37 N. Y. 586; 1 Am. & Eng. Ency. of Law [1st ed.] 174; *Wolfe* v. *Howes*, 20 N. Y. 201; *Dexter* v. *Norton*, 47 N. Y. 64; *Harmony* v. *Bingham*, 12 N. Y. 107; *School Dist.* v. *Dauchy*, 25 Conn. 530.) The case should have been submitted to the jury. (*Haynes* v. *Aldrich*, 133 N. Y. 291; *Smith* v. *Alt*, 7 Daly, 492; *McCabe* v. *Evers*, 30 N. Y. S. R. 833; *Zimmer* v. *Black*, 37 N. Y. S. R. 312.) The holding over must be shown to be wrongful and tortious. (*Schuyler* v. *Smith*, 51 N. Y. 314; *Pickett* v. *Bartlett*, 107 N. Y. 277; *Smith* v. *Alt*, 7 Daly, 492.) Where the tenant holds over involuntarily, not for his own convenience, but because he cannot help it, the act is not tortious, and the question should be submitted to the jury to say whether there was such a holding over as entitled the landlord to treat the occupant as a tenant for another year. (*Smith* v. *Alt*, 7 Daly, 492.) This action cannot be maintained, for at most all the plaintiff can recover is double the rent for the fifteen days' occupancy of the house, the defendants having given notice of their intention to quit at the expiration of the term created by the lease. (4 R. S. [8th ed.] 2457, § 10; *Hall* v. *Ballentine*, 7 Johns. 536; Wood on Landl. & Ten. 967, § 558; Washb. on Real Prop. [5th ed.] 638, 639.)

*George Putnam Smith* for respondent.    It is settled beyond question that upon a tenant's failure to yield the premises at the time provided by the lease, the landlord has the option either to treat him as a trespasser and dispossess, or to con-sider the tenancy renewed for another term of the lease. (*Schuyler* v. *Smith*, 51 N. Y. 309 ; *Adams* v. *City of Cohoes*, 127 N. Y. 182 ; *Haynes* v. *Aldrich*, 133 N. Y. 287 ; *Oussani* v. *Thompson*, 19 Misc. Rep. 524 ; *Regan* v. *Fosdick*, 19 Misc. Rep. 489.)    The illness of defendants' mother, even if it be considered an "act of God," did not discharge them from lia-bility under their contract.    (*Regan* v. *Fosdick*, 19 Misc. Rep. 489.)    There was no question of fact to be submitted to the jury.    (*Oussani* v. *Thompson*, 19 Misc. Rep. 528.)

O'BRIEN, J.    The plaintiff's action was to recover rent alleged to be due upon the lease of certain premises for the month of May, 1895, and the six following months of that year.    The lease was executed in March, 1894, and was to terminate in one year from the first of May following.    The defendants, who were the tenants under the lease, vacated the premises on May 15th, 1895, but as it was claimed that they held over after the expiration of the lease for fifteen days, it was held that they were liable for the rent for another year, and the plaintiff recovered for the seven months of the year that had elapsed before the commencement of the action. The rent, by the terms of the lease, was payable monthly, and the court directed a verdict for the plaintiff for $558.63, being the stipulated rent for the seven months, with interest.

The complaint alleged the making of the lease, the posses-sion thereunder by the defendants, and that they had con-tinued in possession until the time of the commencement of the action.    The defendants, in their answer, allege that they surrendered possession of the premises to the plaintiff on May 15th, 1895, and that he accepted such surrender ; that they had notified him in the month of February preceding that they would not take or keep the house for another year after May 1st, 1895, when the term fixed by the lease expired ;

that after this notice the plaintiff was permitted to show the premises to persons wishing to hire or purchase them, and to place upon the house the usual notice that it was to let; that the defendants moved from the house with all their property and belongings, and that of the family, on the first day of May, 1895, before the lease expired, except from the bed-room where their mother was confined by a dangerous illness until the fifteenth of May following, when she was removed and the premises wholly vacated, and that they were forbidden by the physician in charge from moving or disturbing the mother during the fifteen days, and were informed by him that it would imperil her life if an attempt was made to remove her. These affirmative allegations in the answer were pleaded together as a single defense. On the trial it was conceded that the defendants had the affirmative of the issues, since the written lease was produced and admitted by the pleadings and the possession under it.

It appears from the record that the defendants' counsel then proceeded to open the case to the jury, and at the close of the opening the court suggested that the controversy would resolve itself into a pure question of law, and that the facts should be agreed upon. The plaintiff's counsel then admitted that the notice from the tenants of their intention to surrender up the premises on the first of May had been given in February, as alleged in the answer. The defendants' counsel then stated that the reason for holding over after the expiration of the lease was the sickness of the defendants' mother, she then being a member of their family, and he stated that unless he could have it admitted as it is pleaded that he wanted no admission whatever. The plaintiff's counsel then admitted that fact, as set forth in the answer. The last clause of the answer contained an allegation that the holding over was with the knowledge and permission of the plaintiff, the landlord, and at the suggestion of the plaintiff's counsel this allegation was withdrawn. The case then states that upon the record and the defendants' counsel's opening, the court, at the request of the plaintiff's counsel, directed a verdict against the defend-

ants for $558.63, and that the defendants excepted to this direction.

It is somewhat difficult to ascertain from the record just what questions were passed upon by the court at the trial. It is clear enough that he held that the defendants were liable for another year's rent from the first of May, 1895, notwithstanding the facts alleged in the answer with respect to the illness of the defendants' mother, and the impossibility of her removal without endangering her life.

The learned court must also have held that the other allegations of the answer pleaded in connection with the fact just referred to, that, upon the removal of the mother on the 15th day of May, 1895, the defendants surrendered the premises to the plaintiff, and that the latter accepted such surrender, was not available as a defense. In view of the fact that the defendants were requested to withdraw a particular clause in the answer, which was complied with, and of the further fact that the case states that a verdict was directed upon the record and the opening of the defendants' counsel, it must, I think, be assumed that the decision was that the answer contained no defense after the allegation had been withdrawn, which stated that the holding over was with the consent of the landlord. After the defendants' counsel had withdrawn this allegation he stated that he desired to have the other facts admitted just as he had pleaded them and this request was complied with. The admission, therefore, must be held to cover all the facts affirmatively pleaded in the answer, except the particular allegation which had been withdrawn. After verdict was directed against the defendants it would not be a fair construction of what took place at the trial to hold that the admission applied only to the single fact of holding over on account of the sickness of the mother. It must, I think, be held that it was an admission of all the facts affirmatively pleaded, except the single allegation which the plaintiff's counsel requested to be withdrawn. The direction having been made upon the opening of the plaintiff's counsel, which does not appear in the case, and upon the record, the fair construction is that a ver-

·dict was directed upon the answer, after modification by the withdrawal of the allegation referred to and upon the opening of counsel. The record in this connection must mean the pleadings in the case. (*Kley* v. *Healy*, 127 N. Y. 555.)

It was, therefore, admitted by the plaintiff's counsel that fifteen days after the expiration of the term provided by the lease the tenants surrendered the premises to the landlord and that the latter accepted the surrender. After the surrender there could be no recovery of rent, since the landlord could not have the use of the premises and the stipulated rent at the same time. When a landlord accepts a surrender of the premises, this act operates to discharge the tenant from all liability for rent in the future, and if the construction of the proceedings at the trial suggested be the correct one, then the direction of a verdict against the defendants was error.

But, perhaps, the most important question in the case arises upon the facts and circumstances which it is claimed constitute a holding over by the tenant after the expiration of the term specified in the lease. For every purpose necessary to the determination of that question we must assume that the facts are as alleged in the answer, since it must have been upon that assumption that the verdict was directed. There can be no doubt that the rule of law is settled beyond debate or controversy which permits the landlord, at his election, to treat the tenant as holding for another year when the latter remains in possession after the expiration of the term. When the demise is for a definite term of one year at a fixed rent and the tenant holds over after that term expires, the landlord may treat him as a tenant for another year and collect rent accordingly. (*Haynes* v. *Aldrich*, 133 N. Y. 287; *Adams* v. *Cohoes*, 127 id. 182.) But the question is whether the tenant did in fact hold over after the expiration of the term, within the meaning of that rule. If it is an arbitrary one, applicable under all circumstances and conditions and to be enforced in every case without regard to the reason upon

5

which it is founded, it may be said that in a strict sense there was a holding over in this case.   But this rule that obtains in the relation of landlord and tenant is a part of the common law, the chief merit of which is supposed to consist in its adaptability to changing circumstances and new conditions as developed in the progress of time.   It is not an unchangeable code, like that of the Medes and Persians, but a system that has grown up with the growth of civilization, and is capable of being moulded to meet the wants of society in every stage of its progress.   From the facts disclosed by the answer in this case the tenant vacated the house at the expiration of the term, except one bedroom in which a member of his family was confined by illness so serious that he was warned by the physician that any attempt to remove her would imperil her life.   The decision of the learned trial court in the case virtually holds that on the last day of the tenant's term he was placed in a position where he must either pay rent for another year for a house that he did not intend to occupy, or to take the risk of becoming, in a certain sense, responsible for the death of his mother by attempting to remove her from a sick room against the protest of a physician.   This would seem to be pushing a rule of law applicable to the relation of landlord and tenant to a point which makes it very unreasonable, if not absurd, and before assenting to such an application of it, we are naturally forced to inquire whether there was in fact any such holding over by the tenant in this case as the rule fairly contemplates.   Does a tenant who, on the last day of the term is upon his death bed, or is quarantined in his house by the public authorities to prevent the spread of some dangerous or infectious disease, or is insane or compelled to remain in the house against his will by some superior force or stress of circumstances, hold over within the meaning of the law, or in the sense that permits the landlord to treat him as a tenant for another year ?   The principle upon which the rule is founded is that the holding over is such an act of the tenant that the law implies a contract on his part, or leasing of the premises for another year.   But whenever the law

implies a contract from the act or conduct of the party, the act itself, whatever it may be, must be voluntary. The law does not imply a contract or obligation from an act of the party which proceeds from mistake or fraud, or which results from force or coercion of any kind, or is due to any stress of circumstances which involves peril to his life or that of some member of his family. To infer a promise or contract from any act plainly resulting from such causes would manifestly be contrary to reason and justice. The question, therefore, occurs whether the tenant in this case, by failing to remove his mother from the bedroom in the house, or by her presence there during the fifteen days after the expiration of the term, should be held for another year's rent, on the principle that an agreement to hold for another year is to be implied by law from his conduct under the circumstances. If this question must necessarily be answered in the affirmative, there would be no grounds for any further discussion. But it seems to me that, upon reason and all the analogies of the law, a hiring for another year cannot and should not be implied against the tenant under such circumstances. The case is not within the reason of the rule, and, therefore, is not governed by it. While this court has firmly adhered to the principle that the landlord is entitled to treat the tenant who holds over as lessee for another year, it is plain, from what was said in one of the most recent cases, that the rule was not considered an arbitrary one. On the contrary, it is intimated that it was not so rigid that it could not properly be made to bend in exceptional and peculiar cases. (*Haynes* v. *Aldrich, supra.*) Where the holding over is wrongful or voluntary, and not unavoidable in the strictest sense, the rule must be permitted to have full application. But where the tenant, as in this case, is obliged to retain a room in the house for a short period of time in order to avoid the peril of exposing a member of his family to danger and death, it cannot properly be said that it is a holding over within the meaning of the law. Where a party acts under such a stress of circumstances the act cannot be said to proceed from his own volition any more than if he

had been detained in the house by the police under the direction of the health authorities. ]

In *Haynes* v. *Aldrich* (*supra*) this court enforced the rule in a case where the facts were quite different from those appearing in the record now before us. In that case, however, the learned judge who spoke for the court evidently had in mind some case which might be considered an exception to the rule. That is the plain inference from the following paragraph of the opinion : " I do not mean to say that whether there has been a holding over at all may not some-times be so doubtful upon the facts as to require a submission to the jury. I mean to say that there is no such doubt in the present case. I reserve the question, also, whether there might not be an unavoidable delay, in no manner the fault of the tenant, directly or indirectly, which would serve as a valid excuse. It is enough that here was a holding over not unavoidable, which might have been provided against, and where the chief difficulty grew directly out of the tenant's own wrongful act." )

In *Jones* v. *Shears* (4 Adol. & El. 832) the defendants had rented a coal mine for twenty-one years with the proviso that they might terminate the tenancy at any time by giving a previous notice to that effect. The term commenced in April, 1825, and four years thereafter the defendants gave the notice provided for. They, however, continued in possession for two months after the expiration of the time limited by the notice, working the mine. The landlord brought an action for the rent, claiming that the holding over gave him the right to treat them as tenants at the former rent. The defendants claimed that this holding over was not with any intent to waive the notice and renew the tenancy, and that they had the right to show the circumstances under which they so held over. Upon this question of intent they, therefore, proposed to show that the coal worked by them during those two months was taken from pillars of coal which supported the roof of the mine, and that it was customary for the tenant on leaving the mine to cut away as much coal as could with safety be removed. This evidence was allowed, and COLERIDGE, J., left

it to the jury to say whether under the circumstances the defendants held over with the intent to waive the notice and continue the tenancy or not. The jury found a verdict for the defendants, and a subsequent motion for a new trial was denied. Upon appeal to the King's Bench the ruling at the trial was affirmed, Lord DENMAN, Chief Justice, saying: " It was impossible upon this issue not to leave the question to the jury, and it was for them to decide whether the parties, by their mode of continuing in possession, showed an intention to waive their notice to quit and to remain tenants as before." LITTLEDALE, J., also said: "I do not know that where a tenant holds over he is always to be considered as bound to hold upon the same terms as far as they are applicable. * * * Here, however, the question was not whether the parties held over on the terms of the original tenancy, but whether they held over as tenants at all. It was for the jury to say whether the defendants intended to avail themselves of their notice to quit, or whether the acts done by them amounted to a waiver of such notice." In Chitty on Contracts (pp. 286, 287, 8th Am. ed.), after discussing the effect of the receipt by the landlord of rent after the expiration of the term, and a holding over by the tenant, the learned author adds: " And both the fact of holding over and the payment of rent may be explained so as to rebut the presumption that the parties intended thereby to create a tenancy from year to year." The law in many cases excuses a party from the performance of a contract or some other act when disabled by sickness. Such was the decision of this court in a case where a party had contracted to render personal services for a specified time, but after a partial performance was disabled by sickness. It was held that notwithstanding the non-performance, by reason of this disability, the person rendering the services was entitled to recover upon a *quantum meruit*. ( *Wolfe* v. *Howes*, 20 N. Y. 197.) The disability of a party to do the particular thing, or to perform the contract by reason of sickness is held to be a disability by the act of God. So it has been held that sureties upon a recognizance to secure the

attendance of the principal at court to answer to a criminal charge may, when sued upon the recognizance, defend upon the ground that the principal was disabled from attending by reason of sickness. (*People* v. *Tubbs*, 37 N. Y. 586.) The general rule is that where the performance of a duty or charge created by law is prevented by [unavoidable accident without the fault of the party,] he will be excused. (*Dexter* v. *Norton*, 47 N. Y. 62; *Mill Dam Foundery* v. *Hovey*, 21 Pick. 441.)

It is important to note with more distinctness the wide difference between this case and *Haynes* v. *Aldrich* (*supra*). In that case the tenant violated one of the covenants of the lease by sub-letting the premises. The sub-tenant held over after the expiration of the term and the tenant was sued for rent upon the principle that the holding over created a tenancy for another year. The tenant sought to excuse the holding over by the allegation that a distant relative of the sub-tenant, who was in possession, was detained in the house after the expiration of the term by sickness. This court held that inasmuch as the sub-letting was in violation of the lease and was a wrongful act on the part of the tenant, that he could not be excused by a situation which was plainly the result of his own violation of a covenant of the lease. It is plain that the situation which it was claimed excused the tenant, was of  his own creation by putting another party in possession of the premises. The holding over in that case was very properly attributed to the wrongful act of the tenant in putting a stranger into possession of the demised premises.

When a tenant for a year actually holds over after the expiration of the term, the legal consequences which follow are well settled and understood. The landlord may, at his election, treat him either as a trespasser or a tenant for another year, but in any case the fact of holding over must be established. The landlord cannot treat him as a tenant and collect the rent for another year, unless the facts are such as to justify him in proceeding against him as a trespasser. An act which might ordinarily constitute a trespass, when done or commit-

ted intentionally or voluntarily, cannot always be such when
done or committed involuntarily. (Moak's Underhill on
Torts, pp. 10, 15.)   The mere fact that the tenant or some
member of his family is obliged to remain in a room in the
house after the expiration of the demised term may not neces-
sarily amount to a trespass.   Whether it does or not must
depend upon circumstances.   If he is detained there by the
act of God or of some superior legal power, or some unavoid-
able necessity, he is not ordinarily deemed to be a trespasser.
A trespass presupposes some wrongful act towards the person
or property of another.   If the tenant in this case actually
held over, the plaintiff could maintain ejectment against him ;
but since his intention to remove on the day the lease expired
is clear, and this purpose was defeated only by the dangerous
illness of a member of his family, it would, I think, be dif-
ficult to say that he had such a possession of the house as
would support an action of ejectment, and the same facts and
circumstances that would protect him from such an action
would also defeat the present claim, which is based upon the
theory of an implied agreement to lease for another year.   I
do not mean to say that the facts stated in the answer would
be a defense to an action by the landlord for damages
based upon the breach of the covenant in the lease to
surrender the demised premises at the expiration of the
term.   A duty or obligation imposed by law and one created
by contract or covenant stand upon different grounds when
the party seeks to be excused by the act of God or unavoid-
able accident, or stress of circumstances.   But in this case the
right of the landlord to collect rent for the second year does
not depend upon any express contract or covenant.   It rests
wholly upon the legal implication derived from the wrongful
act of the tenant in holding over, and if that act was not in
fact wrongful, but, under the circumstances, excusable, then
there is no basis for any implied promise or agreement.   I
assume that if the tenant or some member of his family should
die on the last day of the term, that no one would then con-
tend that the continued occupation of the house for a few

days during the funeral would amount to a wrongful holding-
over within the meaning of the law. Such an interpretation
of a principle of the common law would shock not only our
sense of justice, but every feeling of decency and humanity.
The case before us differs from that only in degree. Both
cases must be governed by a common principle. It is obvious
that in the application of the rule now under consideration to
the relation of landlord and tenant there must be a point
beyond which we cannot go, and that point is reached when
the alleged holding over cannot be attributed directly or indi-
rectly to some fault on the part of the tenant. There may
be cases in which the occupation of a room in a house after
the lease has terminated will not amount to a trespass or war-
rant the implication of a lease for another year. Since a
party cannot, as a general rule, commit a trespass or make a
contract without some effort of volition on his part, an act
due to unavoidable accident or resulting from some overruling
necessity or stress of circumstances can form no basis for
imputing a wrong or inferring a contract. It is reasonable,
therefore, to conclude from the facts and circumstances stated
in the answer that the defendant was not a trespasser during
the fifteen days that his mother occupied the room in the
house and could not be removed without endangering her life,
nor a tenant for another year. It follows, therefore, that the
plaintiff was not entitled to recover rent from the time when
the house was completely vacated.

It may be said that this conclusion is a departure from
precedent, but it is not easy to see how it is. No case has
been cited and none has been found where it was held that
such a state of facts, or such a situation as is disclosed by the
answer, amounted to a holding over by the tenant within the
meaning of the rule that is invoked by the landlord to sustain
this action. Legal rules may sometimes be pushed to a point
where they accomplish the grossest injustice, and it then
becomes the duty of the courts to limit their application to
cases that are within their true scope and fair meaning. We
go no further than to say that, upon the facts stated in the

answer, if conceded or established, there was no holding over by the tenant within any fair or reasonable meaning of the rule which permits the landlord to continue the lease for another year.

The judgment should be reversed and a new trial granted, with costs to abide the event.

MARTIN, J.    This action was to recover seven months' rent of a dwelling house situated upon Madison avenue in the city of New York.    There was a lease between the parties by which the defendants rented the premises from May 1, 1894, for the period of one year, the rent payable in monthly installments in advance.    The rent for that term has been paid.    By this action the plaintiff seeks to recover rent for a portion of the succeeding year, on the ground that the defendants held over after the expiration of their term, and thus became liable for the rent of the premises for that time.

The facts are undisputed.    The defendants alleged as a defense to the action the making of the contract or lease with the plaintiff; that in the month of February, 1895, before the expiration of their term, they notified the plaintiff that they would not retain the premises for another year, and that after such notice the plaintiff and his agents were permitted to show the premises and to place the usual notice " To Let " upon them, which remained during the balance of the term.    The defendants then specially alleged that on May 1, 1895, the defendants were prevented from yielding up the possession of the premises by the act of God in afflicting their mother, who was a member of their family, with a disease which, at that time, previously, and subsequently including May fifteenth, confined her to her bed so that it would have endangered her life to take her from the house ; that for that reason and no other, of which the plaintiff had full knowledge and notice, the defendants were obliged to and did occupy a small portion of the premises until May fifteenth; that all their property, furniture and belongings and their family were removed from the premises, and every part thereof on May 1, 1895, except

6

from the sick room in which their mother was confined, and that they were forbidden by the physician in charge to remove her until May fifteenth, when she was at once removed.

Upon the trial it was admitted that upon the first of February, 1895, the defendants notified the plaintiff that on the first of May they would give up and surrender the possession of the premises. That they were occupied under the lease was admitted, also the rate of rent, and the fact that the defendants from necessity held over after the expiration of the lease some fifteen days. The plaintiff then admitted the facts set up in the answer as to the impossibility of the defendants' surrendering possession at the expiration of the year, so that the question presented is whether, notwithstanding the facts alleged in the answer, the plaintiff was entitled as a matter of law to recover rent for the succeeding year, upon the ground that the defendants held over after the expiration of their term.

The admission of the plaintiff amounts to a concession that by reason of the sickness of the defendants' mother it was impossible for them to surrender up the possession of the premises to the plaintiff; that so far as it was possible they did so; and, hence, that their retention was wholly involuntary. If there was any doubt as to the question of impossibility it should have been submitted to the jury, and the defendants' exception to the direction of a verdict was well taken. Thus, in a word, the question is whether that impossibility justified the defendants' action, or whether, although it was impossible to surrender the entire premises, the holding of a small part for a few days imposed upon them a liability for rent for the succeeding year.

It is well settled that where a tenant voluntarily holds over after the expiration of his term, he may be held as upon an agreement to hold for a year upon the terms of the prior lease. (*Conway* v. *Starkweather*, 1 Denio, 114; *Commissioners of Pilots* v. *Clark*, 33 N. Y. 251; [*Haynes* v. *Aldrich*, 133 N. Y. 287, 289.)]

The basis of this liability is often said to be an implied

agreement upon the part of the tenant to hold for another year. While I doubt, as I always have, the propriety of calling this class of obligations implied contracts, but think they are to be regarded as duties which the law imposes, yet, whether they be denominated implied contracts or duties created by law, in either case the right arises upon an implication of law and in no sense upon an express or absolute contract.

It is also well settled that where a duty or charge is created by law, and the performance is prevented by inevitable accident or the act of God, without fault of the party sought to be charged, he will be excused, but where a person absolutely and by express contract binds himself to do a particular thing which is not at the time impossible or unlawful, he will not be excused, unless through the fault of the other party. The reason given for the latter portion of this rule is that he might have provided by his contract against inevitable accident or the act of God. (*Harmony* v. *Bingham*, 12 N. Y. 99; *Tompkins* v. *Dudley*, 25 N. Y. 272; *Dexter* v. *Norton*, 47 N. Y. 62.)

Thus the most that can be said of the obligation that arises from the relation of landlord and tenant and follows by a general lease, is that the tenant is charged with the duty of vacating the premises at the end of his term. If he fails, it is a breach of his duty and ordinarily the law implies or creates a liability on his part for another year's rent. This being a duty implied or created by law and not by an express or absolute agreement, it falls within the first part of the foregoing rule, and, hence, it is obvious that if the tenant's removal was rendered impossible by inevitable accident or the act of God, he is excused for his omission to surrender the premises, at least so far as it creates a liability for a year's rent which is implied by law.

The reason for the distinction between the effect of impossibilty of performance, occasioned by inevitable accident or the act of God, upon an obligation created by express contract, and upon an obligation which the law implies, has been held to rest " upon the unwillingness of the law to at once

create, impose and exact the [performance of an obligation] forbidden or rendered impracticable] by the interposition of Providence." (*School District* v. *Dauchy*, 25 Conn. 530.) Under the principle of the authorities relating to this subject, I think it is clear that, as the obligation sought to be enforced was one created by law and not by the agreement of the parties, [impossibility] of performance was a valid excuse, and the defendants cannot be held for the rent for the subsequent year.

Moreover, the same result may be reached upon another ground. There are many cases where the courts have implied a condition in a contract to the effect that a party is relieved from its terms where its performance has, [without his fault, become impossible.] The principle upon which those cases are based is that, when the contract was made, the parties contemplated that the condition which subsequently existed might arise and render performance impossible, and that the implied condition is to be construed as a part of the existing contract, and thus relieves the party from liability in case that condition arises. (*Dexter* v. *Norton*, 47 N. Y. 62; *Lorillard* v. *Clyde*, 142 N. Y. 456, 462; *Stewart* v. *Stone*, 127 N. Y. 507; *Spalding* v. *Rosa*, 71 N. Y. 40, 44; *Taylor* v. *Caldwell*, 3. Best & S. 826; *Robinson* v. *Davison*, L. R. [6 Ex.] 269; *Kein* v. *Tupper*, 52 N. Y. 550, 555; *Dolan* v. *Rodgers*, 149 N. Y. 489, 492.)

To hold in this case that this agreement was made upon an implied condition that the defendants should not be required to vacate the premises at the expiration of their term in the event that it was rendered impossible by inevitable accident or the act of God is quite within the principle of the authorities cited. But, be this as it may, it is manifest that the charge or liability which the plaintiff seeks to enforce was created by law and not by agreement, and that as its performance was prevented without the defendants' fault, they were excused from the [onerous liability] which the plaintiff now seeks to enforce.

It may well be, and doubtless is, true that the plaintiff may

recover for the time the premises were occupied by the defend-.
ants, or if by reason of their failure to surrender up the prem-
ises additional damages follow, that they may be recovered in
a proper action so that all damages caused by the defendants'
misfortune would be borne by them, but that he cannot recover
the rent for the subsequent year upon the implied contract or
duty imposed by law, seems to me clear.

These considerations lead me to the conclusion that the judg-
ment in this action should be reversed and a new-trial ordered,
with costs to abide the event.

GRAY, J. (dissenting).    This action was brought to recover
of the defendants the rent of certain premises in the city of
New York, which had been originally leased to them by the
plaintiff for the term of one year from May 1st, 1894.    The
defendants held over for some fifteen days after the expiration
of the term and the rental moneys claimed in the action were
for seven months subsequent to May 1st, 1895.    The defense
set up in the answer was, in substance, that, prior to the
expiration of the term mentioned in the written lease, the
defendants had notified the plaintiff that they would not take
the premises for another year and that they had hired another
house; but that they had been prevented from yielding up
possession "by the act of God in afflicting the mother of
these defendants, who was a member of the family of the
defendants, with a disease which    *    *    *    was so great that
it would have endangered her life to have taken her from the
room."    The lease contained the usual agreement of the
lessees to quit and surrender the premises at the expiration of
the term.

Upon the trial no evidence was given ; the facts being then
and there stipulated between the parties.    The plaintiff admit-
ted that the defendants notified him, in February, 1895, that
on the first day of May, 1895, they would surrender the pos-
session of the premises and the defendants admitted that they
remained over after the first of May without the assent of the
plaintiff.    The plaintiff admitted to be true the statement of

the defendants that the mother of the defendants was ill on the first of May, 1895, and in the condition alleged in their answer. Upon these admissions of the parties, the trial judge directed a verdict for the plaintiff for the amount of rental moneys demanded under the terms of the written lease. To that direction the defendants excepted and the Appellate Division having affirmed the judgment entered against them, they further appeal to this court.

The question thus raised for our consideration is, whether the rule of law, which has always controlled in such cases, is to be affected by the fact that the holding over by the defendants was by reason of the illness of their mother, as a member of the family, and, therefore, in that sense, involuntary. The doctrine has been long a settled one in this state that a tenant who holds over his term, either, is a trespasser, or continues to be a tenant, at the sole election of the landlord, and that, in the latter case, the legal implication is that he holds at the former rent. As this appeal should be disposed of upon authority, I shall advert to a few cases and to the opinions which have been expressed. The question was early discussed in what may be regarded as the leading case of *Conway* v. *Starkweather*, (1 Denio, 113); where the tenant held over his term for the period of two weeks. BRONSON, Ch. J., in his opinion, laid down the rule with considerable pertinency and said that "the tenant has no such election as that which belongs to the landlord. If he holds over, though for a very short period, without any unequivocal act at the time to give his holding the character of a trespass, he is not afterwards at liberty to deny that he is in as a tenant, if the landlord chooses to hold him to that relation. If the tenant may hold over for two weeks and then say he is not a tenant, I see no reason why he may not give the same answer after holding over as many months or years. The plaintiff's counsel regards the holding over as only presumptive evidence of the continuance of the tenancy, which would have been sufficiently rebutted by the offered proof that the plaintiff, before his term ended, refused to keep the property another year, even

at a reduced rent. But such are not my views. I do not think this a case for balancing presumptions: but one where the act of the plaintiff in holding over has given the defendants a legal right to treat him as tenant; and that it is not in his power to throw off that character, however onerous it may be." A number of years later, in the case of *Schuyler* v. *Smith*, (51 N. Y. 309), the defendants had held over for the period of three weeks after the expiration of the lease and they opposed the claim of the plaintiff to hold them as tenants for the whole year, upon the ground that they had given him notice, before the expiration of the term, that they did not intend to keep the premises for another year and, with his knowledge, had made arrangements to occupy other premises. Judge EARL, relying on the rule of law, as settled by *Conway* v. *Starkweather* and since recognized by other cases, that where a tenant holds over after the expiration of his term the law will imply an agreement to hold for a year upon the terms of the prior lease, overruled their contention and said: " The safe and just rule I believe to be the one established by authority, that a tenant holds over the term at his peril; and the owner of the premises may treat him as a trespasser or as a tenant for another year upon the terms of the prior lease, so far as applicable." Still later, in *Adams* v. *City of Cohoes*, (127 N. Y. 175), Judge POTTER, delivering the opinion of this court, in the second division, discussed this question in the light of the authorities and observed that, " so absolute is the implication from holding over for a few days only, of a hiring for another year, that the tenant will not be excused from the payment of rent, even where he gave the landlord notice before the end of the term that he did not intend to hire for another year and had hired other premises which would be ready for his occupancy in a few days." Finally, we have the case of *Haynes* v. *Aldrich*, (133 N. Y. 287), where the holding over by the defendant was from the first to the fourth of May, and it was sought to be excused upon these facts, viz.: that the first day of May was a holiday; that on the second day of May there was difficulty in engaging

trucks and that a sick boarder could not be moved with safety
until the fourth day. Judge FINCH discusses in his opinion
the efficacy of such a defense, somewhat elaborately, and,
referring to the rule as well settled by authority that where
there is a holding over by the tenant the law will imply an
agreement to hold for a year upon the terms of the prior lease,
makes the following observations upon the argument of the
appellant: "The appellant does not deny the rule but seeks
to qualify it so as to mean that it is only when the tenant holds
over voluntarily and for his own convenience that the landlord's
right arises, and that it does not so arise when the tenant holds
over involuntarily, not for his own convenience, but because he
cannot help it. I am averse to any such qualification. It would
introduce an uncertainty into a rule whose chief value lies in
its certainty. The consequent confusion would be very great.
Excuses would always be forthcoming, and their sufficiency be
subject to the doubtful conclusions of a jury, and no lessor would
ever know when he could safely promise possession to a new
tenant." Again, he says that, "if the rule in this case seems
to involve a hardship, that is sometimes true of every gen-
eral rule, however just and wise, but does not justify its abro-
gation. To sustain this defense would open the door to a
destruction of the settled doctrine and tend to involve the
rights of both lessor and lessee in uncertainty and confusion."
This is pretty strong language; but the appellants, neverthe-
less, seek to distinguish the case as an authority; because
there it was a sub-tenant, whose illness prevented the sur-
render of possession, and the question was reserved whether
there might not be an inevitable delay, in no manner the fault
of the tenant, which would serve as a valid excuse. It is true
that there is that much of a distinction between the two cases;
but I think the distinction to be somewhat shadowy, so far as
the excuse for not yielding up the premises promptly is con-
cerned, and I agree with the reasoning of the opinion at the
Appellate Division in the present case, that "no such qualifi-
cation should be, or could safely be, imported into the absolute
rule of law. It would make the landlord rather than the ten-

ant suffer by reason of a misfortune to the tenant, which he, and not the landlord, should bear the burden of."]

It seems to me that Judge FINCH, in *Haynes* v. *Aldrich*, has given a convincing reason against importing any qualification into a well-settled rule of law, by which its application might be rendered uncertain according to the facts pleaded by the tenant.

Since the leading case of *Conway* v. *Starkweather*, I am not aware of any qualification of the rule having been admitted and I think that if a case arises in which it operates harshly, the misfortune is one which, for the sake of the stability of the rule, should be borne by the tenant rather than by the landlord. The underlying principle is that the rights of the parties are determined by their engagements and effect must be given to the contract. The doctrine as settled by the decisions of the courts of this state obtains in many other jurisdictions. (99 Ill. 151; 3 Ohio, 294; 4 Md. 450; 9 Conn. 334; 2 Penn. St. 144; 69 Ala. 549.)

This is in no sense to be considered like a case where performance of a condition is prevented by the act of God; nor one where the discharge of an obligation was not fully intended by the parties. It is simply that of a contract which, by its terms, gave the occupancy and use of the premises of the owner for a specified term and under specified conditions; which fixed the rent to be paid and which contained the covenant of the lessee to quit and surrender the premises at the expiration of the demised term.] The distinction is well settled between an obligation or duty imposed by law and that created by covenant of the party. In the former case, if the party is disabled from performing, without any default of his own, the law will excuse him. Illustrations of this are where waste to a tenement is caused by its destruction by tempest or by enemies; or where the contract is for personal services and the condition of continued existence is raised by implication. But where the party creates a duty by his own contract, he is bound to make it good, notwithstanding any accident by inevitable necessity; because he might have provided against

7

it by his contract.   (2 Wm. Saunders, 422, note 2 ;   21 Pick.
417, 441 ;  47 N. Y. 62, 64.)

Of course, there was nothing to submit to the jury and the
defendants did not request a submission.   All the facts for a.
judgment were stipulated, when the case came on for trial,
and they presented the one question for the court, whether,
in law, they established the plaintiff's right to the rent
demanded.

I think the judgment should be affirmed, with costs.

O'Brien and Martin, JJ., read for reversal, etc. ; Parker,
Ch. J., and Haight, J., concur.

Gray, J., reads for affirmance, and Bartlett and Vann, JJ.,
concur.

Judgment reversed, etc.