EDWARD P. MAIDMENT, Appellant, *v.* CHARLES A. KRAUSE MILLING COMPANY, Respondent.

Second Department, April 2, 1929.

*Lewis J. Stage,* for the appellant.

*John Bright* [*Abram F. Servin* with him on the brief], for the respondent.

KAPPER, J. The defendant had a mill in Milwaukee, Wis. Its products were feed for stock, cattle and poultry. The plaintiff had been in its employ as a salesman for sixteen years prior to the period to which the controversy relates. In a written agreement employing plaintiff he was given a drawing account of $300 a month and a brokerage or commission of $1 a ton " on the sale and delivery " of specified feeds; and also fifty cents and twenty-five cents a ton respectively on other products of the defendant's mill.

The controversy in this case is whether plaintiff is entitled to his commissions on orders obtained from customers down to September 2, 1924, on which day the defendant's mill was burned down and practically wholly destroyed. And as a corollary to this plaintiff contends that, in addition to his commissions on sales or orders actually received but admittedly not filled, he is also entitled to damages for the balance of the life of the contract on the theory that the fire prevented plaintiff from earning what he might have earned if it had not occurred.

There is no real disputed fact. Plaintiff made no requests to find, but does except to certain findings upon the ground that they are without evidence to support them.

A finding to which no exception was lodged is that plaintiff had been in defendant's employ for sixteen years, during all of which time " all orders for feed sold by the plaintiff to the customers of the defendant were upon printed blanks furnished by the defendant to the plaintiff which contained the following clause: ' 1. All contracts are contingent upon the destruction of all or any part of seller's plant from any cause, or because of strikes, accidents, car shortages, embargoes, delays of carriers or other delays unavoidable or beyond seller's control.' "

Plaintiff's exceptions present nothing beyond the proposition whether under his contract of employment, despite the fire, he was entitled to commissions on orders taken by him and which the defendant did not fulfill, and claimed it could not (which the trial court found to be the fact), and to damages for the value of the contract after the fire on the theory of a breach by the defendant in regarding the contract at an end. While plaintiff sought to prove that the fire did not cause such a destruction of buildings or plant as would prevent the defendant from filling orders, there was ample evidence that the destruction of the mill and plant

was practically or substantially complete. An effort was made by plaintiff to show that there was a vacant mill located near defendant's mill, which defendant might have obtained to manufacture some products instead of canceling the orders on account of the fire. On the other hand, there was evidence that defendant endeavored to arrange with another milling company to manufacture its products. So far as the trial went, there was no finding that defendant wrongfully canceled the orders in exercising its reserved right under the order blanks, nor is there any claim, the subject of a finding, that defendant's conduct was in bad faith or resulted from improper motives. The findings are directly to the contrary; and the holding was that the occurrence of the fire was a thing over which the defendant had no control and that it wholly deprived it of its ability to perform. The exceptions, therefore, of the appellant, based upon the ground that there is no evidence to support the findings, do not seem to me well founded inasmuch as there was evidence from which could be and was found such a destruction of the defendant's plant as to render the defendant unable to fill the orders obtained by the plaintiff. Indeed, the testimony showed that the defendant after the fire had no " facilities " and " no means whatever " for the fulfillment of the orders which plaintiff said he obtained.

The difference between the litigants proceeds *arguendo* by plaintiff that defendant was legally bound to have protected itself in this written contract with the plaintiff against the fire contingency in the absence of which the defendant is liable not only for orders taken, though not filled, but for the value of the contract after the fire as well; while on the part of the defendant it is asserted in effect, *first*, that *delivery* of the feeds was a condition precedent to plaintiff's earning a commission, and *second*, that there is necessarily to be read into the contract the *implied* condition relieving defendant of performance where inability to perform, not attributable to wrongdoing or bad faith, is shown.

The plaintiff's position is shown by cases, such as *Harmony* v. *Bingham* (12 N. Y. 99, 107), where the rule laid down is that " where the party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident or delay by inevitable necessity, because he might have provided against it by contract." And as emphasizing the point, the case of *Magida* v. *Wiesen*, decided by us (114 App. Div. 866), is cited by the appellant, where there was an unconditional contract of employment for a fixed period and the employee was held entitled to recover his stipulated wages although the building in which he was employed was burned and the work interrupted, there

being no provision restricting performance to the particular building that burned, and nothing to show that the work could not elsewhere be done.

*Booth* v. *Spuyten Duyvil Rolling Mill Co.* (60 N. Y. 487) presents the same distinguishing feature. There the mill company contracted to make and deliver a certain manufactured article within a specified time. The mill had ample time for performance, and it unduly delayed the manufacturing until the last moment when it met with the mishap of a fire in the mill. The court there explicitly found that defendant was prevented, after it had delayed manufacturing, from completing the contract, but that " there was ample time, prior to that event [the fire], to have manufactured," adding " a party cannot postpone the performance of such a contract to the last moment and then interpose an accident to excuse it."

Numerous cases in support of defendant's position are available. They are well summed up in the statement of the law made by Judge MARTIN in *Herter* v. *Mullen* (159 N. Y. 28, 44) where it was said: " There are many cases where the courts have implied a condition in a contract to the effect that a party is relieved from its terms where its performance has, without his fault, become impossible. The principle upon which those cases are based is that, when the contract was made, the parties contemplated that the condition which subsequently existed might arise and render performance impossible, and that the implied condition is to be construed as a part of the existing contract, and thus relieves the party from liability in case that condition arises."

This ruling was followed in *Whipple* v. *Lyons Beet Sugar Refining Co.* (64 Misc. 363, 364), where the contract was to sow sufficient seed on suitable soil as would grow a certain quantity of sugar beets for a sugar company, it being held that the contract was subject to the *implied* condition that if the seeds planted failed to grow on a portion of the land by reason of drought or other climatic conditions over which the party had no control, performance would be excused.

Likewise in *International Paper Co.* v. *Rockefeller* (161 App. Div. 180, 184), *Herter* v. *Mullen* (*supra*) was applied to a contract for the delivery of pulp wood which was held to be subject to the *implied* condition of its continued existence so that, where before the completion of the contract the timber was destroyed by fire, performance was thereafter excused.

*Dexter* v. *Norton* (47 N. Y. 62) is a leading case on the release from obligation of a vendor where the articles agreed to be delivered are destroyed by fire so that delivery became impossible, the vendor

in such an event being not liable for damages for non-delivery. The opinion points out the necessity for such a construction of the contract " as to imply a condition that the property was to continue in existence." That case is cited in practically every subsequent case dealing with the point, amongst them *Lorillard* v. *Clyde* (142 N. Y. 456). Clyde agreed to guarantee Lorillard a percentage of his shares of stock in a steamship company for a period of years before the expiration of which the company was dissolved in an action brought by the Attorney-General. In the course of the opinion Chief Judge ANDREWS said (p. 462): " The general doctrine that when a party voluntarily undertakes to do a thing, without qualification, performance is not excused because by inevitable accident or other contingency not foreseen, it becomes impossible for him to do the act or thing which he agreed to do, is well settled. This doctrine protects the integrity of contracts, and one of the reasons assigned in its support in the early case of *Paradine* v. *Jane* (Aleyn Rep. 26) is that as against such contingencies the party could have provided by his contract. (See *Harmony* v. *Bingham*, 12 N. Y. 99; *Ford* v. *Cotesworth*, L. R. [4 Q. B.] 134; *Jones* v. *U. S.*, 96 U. S. 24.) But it is now well settled that when performance depends on the continued existence of a given person or thing, and such continued existence was assumed as the basis of the agreement, the death of the person or the destruction of the thing puts an end to the obligation. Executory contracts for personal services; for the sale of specific chattels, or for the use of a building, are held to fall within this principle. (*Dexter* v. *Norton*, 47 N. Y. 62; *People* v. *Globe Mutual Ins. Co.*, 91 id. 174; *Taylor* v. *Caldwell*, 113 Eng. C. L. 826.) These cases are not exceptions to the rule that contracts voluntarily made are to be enforced, but the courts in accordance with the manifest intention construe the contract as subject to an implied condition that the person or thing shall be in existence when the time of performance arrives."

*People* v. *Globe Mut. Life Ins. Co.* (*supra*) involved an executory contract for personal services. There, one Mix·was employed by the insurance company as a general agent under a contract by which he was to receive a specified annual salary for the term of not less than five years, and before the expiration of the five years the insurance company was dissolved. FINCH, J., writing, said that " there was no breach of the contract between Mix and the insurance company by either of the parties; " that " what had happened was a dissolution of the contract by the sovereign power of the State, rendering performance on either side impossible."

*Stewart* v. *Stone* (127 N. Y. 500) is also an oft-referred-to case.

The plaintiff there delivered milk to the defendant to be manufactured into cheese and butter under an agreement for a stipulated compensation and a fire destroyed the cheese factory with a loss of milk, butter and cheese to the plaintiff. The complaint charged that the fire was caused by defendant's negligence, but this was found against plaintiff. The Court of Appeals affirmed the judgment rendered in favor of defendant, in an opinion by BRADLEY, J., saying, *inter alia* (p. 507): " It is true that where an absolute executory contract is made, the contractor is not excused by inability to execute it caused by unforeseen accident or misfortune, but must perform or pay damages unless he has protected himself against such contingency by stipulation in the contract. (*Harmony* v. *Bingham,* 12 N. Y. 99; *Tompkins* v. *Dudley,* 25 id. 272; *Wheeler* v. *Conn. Mut. L. Ins. Co.,* 82 id. 543.) But there may be in the nature of a contract an implied condition by which he will be relieved from such unqualified obligation, and when, in such case, without his fault, performance is rendered impossible, it may be excused. That is so when it inherently appears by it to have been known to the parties to the contract, and contemplated by them when it was made, that its fulfillment would be dependent upon the continuance or existence at the time for performance, of certain things or conditions essential to its execution. Then in the event they cease, before default, to exist or continue, and thereby performance becomes impossible without his fault, the contractor is, by force of the implied condition to which his contract is subject, relieved from liability for the consequences of his failure to perform."

Particular stress may well be placed upon that portion of this last quotation which emphasizes conditions " known to the parties to the contract, and contemplated by them when it was made," etc. At bar we have the plaintiff for sixteen years taking orders for the defendant with the contingency clause regarding the destruction of the plant presented by him to every buyer and duly signed before acceptance. It seems to me that in the light of such conditions, plaintiff cannot say that the fire clause meant nothing to him, although it was not expressly put into his written contract of employment. From the surrounding circumstances, the conclusion is properly deducible that plaintiff realized and agreed that orders taken by him were effective only upon *delivery,* and that *delivery* was excusable in the event of inability due to a destruction of the plant by fire. This view upholds the disposition made of plaintiff's third and fourth causes of action.

We have not overlooked the appellant's point relative to the

contribution exacted towards the employment of Schwartz, but are of opinion that it was also correctly disposed of by the learned trial court.

The judgment should be affirmed, with costs.

Present — LAZANSKY, P. J., RICH, YOUNG, KAPPER and SEEGER, JJ.

Judgment unanimously affirmed, with costs.