KARL LOEVENICH, Respondent, *v.* ISRAEL SACK et al., Defendants, and WILLIAM J. BROWN, Doing Business as BROWN WAREHOUSE Co., Impleaded Defendant-Appellant.

First Department, December 20, 1948.

*Henry K. Chapman* for appellant.

*John B. Fitzpatrick* for respondent.

DORE, J. In this action for claimed conversion of personal property sold at public auction by defendant Brown, a warehouse owner, because of failure to pay storage charges, the trial court directed judgment for plaintiff against Brown and left to the jury only the issue of damages on which the jury returned a $3,000 verdict against Brown. During trial the court dismissed as to the other defendants. Defendant Brown appeals.

Plaintiff, an acquaintance of Israel Sack, an antique dealer, claimed that he offered Sack certain antique furniture and other articles for display in Sack's showrooms, and Sack told him that he did not at the time have space for such display but directed plaintiff to send the goods to Brown's warehouse where Sack had a storage room. Sack emphatically denied any such arrangement with plaintiff. He testified that in April, 1945, he casually met plaintiff who said he had to give up a cottage and was looking for a storage place for his furniture and Sack merely told him that he did business with Brown's warehouse, 415 East 54th Street, and that was all there was to the conversation. Sack denied he ever told plaintiff to send any goods to Brown's warehouse for him or that he would pay storage charges and testified that after the above-mentioned conversation, he never saw plaintiff again until November, 1946, long after the goods had been sold.

Plaintiff testified that in accordance with his claimed understanding with Sack he sent on June 8, 1945, certain goods by the Flushing Van & Storage Company to Brown's warehouse. Margaret Brown, appellant's secretary, testified that the truckman said the warehouse was supposed to put the articles in Mr. Sack's room and on the receipt which she gave the truckman on June 8, 1945, she made a notation " To I. Sack room ". Thereafter when Sack examined the furniture and other articles in Brown's warehouse, he stated he did not know to whom they belonged.

In July 1945, Brown wrote to the Flushing Van, the trucking company, about the articles delivered by the truckman on June 8th, and pointed out that storage charges were accumulating; but the trucking company replied in writing denying that it had ever delivered anything to defendant's warehouse.

The goods were stored in the warehouse until they were sold on July 9, 1946, in satisfaction of the unpaid storage charges, after the legal advertising required by section 118 of the General Business Law.

Not until November, 1946, a year and a half after the articles had been delivered and long after they were sold, did plaintiff for the first time appear at Brown's warehouse and make demand for the chattels. He was told they had been sold for failure to pay the storage charges. Plaintiff then brought this suit against Brown and joined Israel Sack and his company, Israel Sack, Inc.

The trial court held that since no notice, personally or by mail, had been given to plaintiff as required by section 118, judgment should be directed in plaintiff's favor against Brown and

charged that Brown was liable for failure to give notice on the ground that he failed to make proper inquiry so as to get the name of the bailor. Ordinarily, and in the abstract, that may be true; but this case is unique in its facts and we think the court should have permitted the case to go to the jury on all disputed issues of fact. If defendant's testimony is true, the goods were delivered for Sack but were not held for Sack's account as he disclaimed any interest in them or knowledge of them. Before the trial, the truckman who delivered them took the same position. At trial an employee of the truckman said he mentioned Loevenich's name first at the time of delivery at the warehouse but " as per our instructions, it was supposed to go into somebody by the name of Sack, and we mentioned the name of Sack, and then they knew who it was for." Defendant's testimony was that Brown was never informed that plaintiff was the owner, or had any interest in the goods and Brown never heard of plaintiff from any source until plaintiff appeared in November, 1946, long after the goods had been sold.

Sack testified that there was nothing on the articles in the warehouse to show to whom they belonged. Brown likewise testified that after repeated and diligent examinations of the goods nothing was found on any of the articles to identify the owner or his address. Nevertheless, plaintiff claimed he had attached a label with his name and address on the furniture and wrote the name on the boxes with charcoal or black chalk. If this was so, and Brown knew plaintiff's name and address, it is difficult to understand any rational motive why Brown should have notified Sack, notified and made inquiry of the Flushing Van Company, and incurred the expense of publishing and advertising pursuant to section 118, without also performing the very slight additional task of giving notice by mail to plaintiff.

In directing judgment the trial court either accepted plaintiff's testimony, which in part is not convincing, or found as a matter of law that appellant Brown could have ascertained plaintiff's name and address. These were issues of fact for the jury. There was testimony that the truckman advised Brown that the furniture was for appellant's customer Sack and did not give any information whatever about plaintiff.

Plaintiff points out that section 118 required written notice delivered in person or by registered mail: " to the person on whose account the goods are held, and to any other person known by the warehouseman to claim an interest in the goods."

As the section is in derogation of common law, plaintiff contends it must be strictly construed and, except for the right given under section 118, a warehouseman must reduce his claim for storage to judgment and then take the usual means to enforce the judgment. Plaintiff does not suggest how defendant Brown, if his testimony is true, without any knowledge whatever as to plaintiff, his existence, his name or address, could reduce a claim against him to judgment. Sack had personal knowledge of the sale and was in the warehouse when it took place though he did not attend it, but his son did. There is a distinction between a notice imposed by statute and one created by agreement of the parties (*Herter* v. *Mullen,* 159 N. Y. 28, 40; 46 C. J., Notice, § 51). In the *Herter* case (*supra*) O'BRIEN, J., writing for the majority of the Court of Appeals, said: " Legal rules may sometimes be pushed to a point where they accomplish the grossest injustice, and it then becomes the duty of the court to limit their application to cases that are within their true scope and fair meaning." The law does not require performance of the impossible.

In our opinion, on the particular and unusual state of facts herein, the evidence raised issues of fact as to appellant's liability which should have been submitted to the jury for its determination. At least it was an issue of fact for the jury whether Brown knew or, in the exercise of reasonable care, ought to have known that plaintiff Loevenich was owner or bailor of the goods or had any interest in them whatever or whether there was any other person known by the warehouseman to claim an interest in the goods.

During trial the court dismissed the complaint as to Israel Sack and Israel Sack, Inc. Although plaintiff excepted at trial and defendant Brown appeals from the entire judgment, on this appeal no claim is made that the judgment in favor of defendants Sack and Sack, Inc., should be disturbed.

The judgment in plaintiff's favor against defendant Brown should be reversed and a new trial ordered on the issues surviving between plaintiff and said defendant, with costs to abide the event.

GLENNON, J. P., COHN, CALLAHAN and SHIENTAG, JJ., concur.

Judgment unanimously reversed and a new trial ordered on the issues surviving between plaintiff and said defendant, with costs to abide the result of the final judgment in the action.