OUSSANI v. THOMPSON.

(Supreme Court, Appellate Term, First Department. February 26, 1897.)

LANDLORD AND TENANT—HOLDING OVER.

　　A tenant holds over, as a matter of law, where she does not complete the removal of her property from the premises until 5 o'clock in the afternoon of the day after her term expires, though she commenced to move on the last day of the term, and proceeds with reasonable expedition. Steam-Power Co. v. Halsted, 5 App. Div. 124, 39 N. Y. Supp. 43, distinguished.

Appeal from Eighth district court.

Action by Joseph Oussani against Sadie L. Thompson to recover installments of rent. From a judgment entered on a decision of the trial justice in favor of defendant, plaintiff appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Wahle & Stone, for appellant.

P. C. Talman, for respondent.

McADAM, J. The plaintiff, as landlord, demised to the defendant, as tenant, the upper part of the building No. 32 West Twenty-Ninth street, New York City, for one year, expiring October 1, 1896. The tenant commenced to move on that day, and, according to the evidence of the landlord, held possession of the premises for four or five days thereafter; while, according to the proofs adduced on the tenant's behalf (which the justice found to be true), she was entirely out of the premises by 5 o'clock on the afternoon of October 2d. The landlord claims that this unauthorized use of his property after the expiration of the term gave him the right to hold her as a tenant for a renewed term. In Schuyler v. Smith, 51 N. Y., at page 313, the court said: "The law is too well settled to be disputed that where a tenant holds over after the expiration of his term the law will imply an agreement to hold for a year upon the terms of the prior lease." Such is the rule declared by all text writers upon the subject, and followed by the courts in a long line of decisions. And the only point upon which courts have differed in the application of the rule is as to the sufficiency of the evidence in the particular case to establish the holding over. "It is no valid excuse for the holding over to say that the defendants were engaged in removing their goods, and consumed more time in such removal than was necessary for that purpose. Without enlarging upon the evils to which incoming tenants, as well as landlords, would be subjected by a rule of law that should permit such holding over, it is enough to say that no such rule exists in this state; but, on the contrary, the statute provides, in effect, that in case a tenant shall continue in possession a single hour after the expiration of his term, the landlord may eject him and his goods by a prompt and summary proceeding." Witt v. Mayor, etc., 28 N. Y. Super. Ct. 261. In Shanahan v. Shanahan, 55 N. Y. Super. Ct. 339, it appeared that the tenant, after the expiration of his lease, supposing there was no particular hurry in getting out, remained in possession of the demised premises four days after the expiration of the term, leisurely removing his goods to other premises previously hired by him, which goods could have been removed in a much shorter time, but giving instructions to his employé in charge to move the things out at once if any one from the landlord asked for the keys. Held, that these facts showed an intentional act on the part of the tenant of using the premises for a time for his benefit; and that the landlord had a right to elect to treat him as a tenant upon the conditions of the first letting. In Conway v. Starkweather, 1 Denio, 113, it was held that when a tenant, before the expiration of his term, communicated to the landlord his determination not to keep the premises another year, but nevertheless remained in

possession a fortnight after the expiration of the term, such continuance in possession notwithstanding what had taken place enabled the landlord to treat him as a tenant for another year upon the same terms as in the prior lease. In Schuyler v. Smith, supra, the holding over was for 21 days under circumstances similar to those in the preceding case, and the tenant was held liable as upon a renewal of the term. Referring to Conway v. Starkweather, the court (at page 316) said: "The case seems to have been well considered. It has stood unquestioned for more than twenty-five years." Willard, in his work on Real Estate (page 97), cites the Conway Case with approval, and as authority for the doctrine therein enunciated. And the learned editor of the eleventh edition of Kent's Commentaries (volume 4, p. 117), in citing that case, says: "If the landlord elects, as he may, to treat the tenant as holding under the terms of the original lease, the tenant cannot deny the tenancy." And so that case has been commended, and the principle followed, in every authoritative decision since. In Haynes v. Aldrich, 133 N. Y. 287, 31 N. E. 94, the defendant leased certain premises for a year. The lease contained a provision that the premises should be occupied as a private dwelling, and a covenant on defendant's part not to sublet without the written consent of plaintiff. Defendant did sublet, without permission, to C., who occupied the premises as a boarding house. The term expired May 1st. Before its expiration, defendant informed plaintiff that she did not desire to renew her lease for another year. The 1st day of May was a holiday. Possession was retained by the subtenant until May 4th, the excuse being the difficulty in engaging trucks on the 2d, and that on the 3d one of the boarders was sick, and could not then be moved with safety. In the afternoon of the 4th the keys were tendered to plaintiff, but refused. In an action to recover rent it was held that plaintiff was entitled to consider the lease renewed for another year. The sickness of the mother of the tenant in Herter v. Mullen, 9 App. Div. 593, 41 N. Y. Supp. 708, was the sole cause of his remaining in possession for two weeks after the expiration of the term, and it was held that the right of the landlord to treat the tenancy as renewed was absolute. In several cases the tenant holding over disavowed any intention of renewing the hiring, and in some the landlord notified the tenant that he must remove on the expiration of the term; yet these circumstances were held not to alter the effect of the holding over, nor the right of the landlord to elect to consider the tenancy as renewed by the tenant's wrongful conduct. Schuyler v. Smith, Shanahan v. Shanahan, and Herter v. Mullen, supra.

While the duration of the holding over has varied in the different cases, this circumstance did not prevent the application of the same rule in each. It is apparent, therefore, that mere length of time was not considered the crucial test of liability, but the wrong in holding over, sometimes deliberately, sometimes negligently, and enjoying the landlord's premises after the right to do so by the terms of the lease had ceased. The covenant of the tenant is that at the expiration of the term she will quit and surrender the premises demised. "There is, then, nothing in the case to take it out of the rule in Para-

dine v. Jane, Aleyn, 27, as expounded by Chambrie, J., in Beale v. Thompson, 3 Bos. & P. 420, namely, if a party enter an absolute contract without any qualification or exception, and receives from the party with whom he contracts the consideration of such engagement, he must abide by the contract, and either do the act or pay damages; his liability arising from his own direct and positive undertaking." Beebe v. Johnson, 19 Wend., at page 502. The tenant did not perform the covenant in this case, for, according to her own evidence, she wrongfully withheld possession of the demised premises from the landlord until 5 o'clock on the afternoon of October 2d.

The tenant's excuse that she moved with all convenient expedition does not relieve her from liability "arising from her own direct and positive undertaking," and merely proves that, if she moved with due expedition, she did not commence the work in time to permit of its completion in compliance with her covenant; the consequences of which neglect cannot, upon any legal principle, be visited upon the landlord. Such indifference to the rights of others finds no sanction either in law or morals. The defendant must be held to have intended the legal consequences of her acts, one of which was to give the landlord the right to elect to treat her as a tenant for a renewed term, and she cannot now be heard to complain that the landlord availed himself of the privilege her conduct afforded. The act of the defendant having given the landlord the right to treat her as a tenant for such renewed term, "it is not in her power to throw off that character, however onerous it may be." Conway v. Starkweather, and Haynes v. Aldrich, supra. In the case last cited the court said:

"The appellant [tenant] does not deny the rule, but seeks to qualify it so as to mean that it is only where the tenant holds over voluntarily, and for his own convenience, that the landlord's right arises, and that it does not so arise when the tenant holds over involuntarily, not for his own convenience, but because he cannot help it. I am averse to any such qualification. It would introduce an uncertainty into a rule whose chief value lies in its certainty. The consequent confusion would be very great. Excuses would always be forthcoming, and their sufficiency be subject to the doubtful conclusions of a jury, and no lessor would ever know when he could safely promise possession to a new tenant."

The facts established by the tenant herself proved a renewal of the tenancy at the option of the landlord, and the question resolved itself into one of law, which should have been decided in favor of the plaintiff. "The judge decides questions of law; the jury questions of fact. It is obviously the right of every suitor to have the opinion of the judge upon questions of law material to the proper determination of his case. The jury are not qualified to determine such questions, and they are calculated to confuse, embarrass, and mislead them. The general rule, therefore, is that it is error to submit questions of law to the determination of the jury." 1 Thomp. Trials, § 1017. If there had been a dispute as to whether the tenant moved from the demised premises on October 1st there might have been a question for the jury to determine. But she testified that she had not removed from the premises until October 2d at 5 p. m., although she commenced the day before; while the landlord testified that the moving was not accomplished until four or five days afterwards; so that the only finding the case admitted of was that one of these

statements was true, and either was sufficient to create the liability charged.    If such a holding over as the tenant admits does not establish a liability on her part, why should a similar holding over for one, two, or three days more (a difference of degree only) create it? Who is to fix the number of days to be allowed, and upon what principle, if the rule which absolutely forbids any holding over is violated? A tenant need not hold over willfully or contumaciously to render himself liable to double rent in a case where such penalty is recoverable by statute (2 Woodf. Landl. & Ten. [Am. Notes by Webster] 749), and there is no logical reason for requiring that a holding over must be of that perverse character to enable the landlord, under the rule established for his protection, to consider the act a renewal of the term.    As Judge Finch says in Haynes v. Aldrich, the utility of the rule lies in the certainty afforded for its enforcement.    To depart from it is to throw away the chart intended as our guide, and wander upon an unknown sea of uncertainty; with contracting parties unable to ascertain their respective rights and duties, lawyers unable to intelligently advise concerning them, and courts unable to direct the true course to be taken.    There is but one safe path, and that is to adhere to the rule so long established, that those interested may understand in advance the consequences of violation, and govern themselves accordingly.

The tenant argues that the judgment in her favor determines as matter of fact that she did not hold over, and that such a finding is warranted by the rulings in Frost v. Iron Co., 1 App. Div. 449, 37 N. Y. Supp. 374, and Steam-Power Co. v. Halsted, 5 App. Div. 124, 39 N. Y. Supp. 43.    Those cases are distinguishable from this.    In the first the court, while recognizing the rule as to holding over, held that the possession of the tenant after the termination of the lease, which will bind him, must be a continuance of that possession which he acquired under the lease; and if it appears that the possession was surrendered to the landlord for any interval of time, however short, the resumption of possession by the tenant under any other agreement will not impose on him the liability which attaches to a tenant who holds over after the expiration of his term.    In the second it appeared that the tenant, a printer, had moved all his property with the exception of one press from the premises, and delivered the key to the person in charge of the building on the last day of the term. Two days later some of the employés of the defendant went upon the premises, as alleged, without his knowledge; and it was held to be a question for the jury whether the tenant held over.    The present case is devoid of any such extenuating or absolving features, and rests upon an unexcused and inexcusable use of the demised premises without the landlord's permission until 5 o'clock of the afternoon of October 2d.    This was a clear violation of the landlord's rights, and entitled him to avail himself of the rule invoked.

For these reasons the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.    All concur.