<hr />

MYERS v. BEAKES DAIRY CO.

(Supreme Court, Appellate Division, First Department. June 11, 1909.)

1. LANDLORD AND TENANT (§ 90*)—HOLDING OVER AFTER EXPIRATION OF TERM —EFFECT.

Where a tenant for a year holds over after the expiration of his term, the law implies an agreement for a new lease for another year on the terms of the original lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 284–289; Dec. Dig. § 90.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. LANDLORD AND TENANT (§ 231*)—HOLDING OVER—EVIDENCE.

A landlord, seeking to hold his tenant liable under an implied agreement for a new lease because of his holding over after the expiration of the term, has the burden of proving that the tenant remained in possession and that such possession was a continuance of the possession under the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 231.*]

3. LANDLORD AND TENANT (§ 231*)—HOLDING OVER—EVIDENCE.

Evidence *held* not to show that a tenant or his subtenant remained in actual possession subsequent to the termination of the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 231.*]

Clarke and Houghton, JJ., dissenting.

Appeal from Appellate Term.

Action by Frederick S. Myers against the Beakes Dairy Company. From a determination of the Appellate Term, affirming a judgment of the Municipal Court in favor of plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

E. Walter Beebe (C. W. Bennett, on the brief), for appellant.
Hamilton R. Squier, for respondent.

INGRAHAM, J. By an instrument dated the 19th day of February, 1907, the defendant leased from plaintiff a certain building known as Nos. 507–509 West Nineteenth Street, in the city of New York, for one year from the 1st day of May, 1907, at the yearly rental of $2,500. The defendant went into possession of the premises under that lease, and actually occupied the premises until July 10, 1907, when it moved out, leaving no property of any kind upon the premises. The building remained vacant until January or February, 1908, when the defendant, with plaintiff's consent, sublet the premises to the Salvation Army, who entered into possession of the property and continued to occupy it until May 11, 1908. There was a Mrs. Corgan who had been in possession of the property before the defendant took possession as a caretaker, and who remained upon the property during all the time that the defendant and the Salvation Army were in possession. The defendant never received the keys of the property, they at all times being in possession of this Mrs. Corgan, but temporarily occupied it during the time that a building which it had occupied was being repaired. The defendant had nothing further to do with the property after the Salvation Army took possession, except to pay the rent for the balance of the term. During the time that the Salvation Army occupied the property it was used by it as a relief station for caring for homeless men, who were required to saw wood, bale up rags, and do work of that kind, for which they were given shelter and food. Some time prior to the 1st of May the Salvation Army vacated the premises. The manager of the Salvation Army, who was called as a witness for the plaintiff, testified that all the bales of rags were shipped out previous to the 1st of May, but whatever rubbish was there was bundled up by the men, but all the rags or property of any value

had been shipped out before the 1st of May; that this rubbish was the residue of the mass of stuff from which the merchantable rags and paper had been selected; that a portion of it was rubbish that was in the building when the Salvation Army took possession; that when the defendant was in possession of the premises there had been stalls for horses there, which were taken down by the Salvation Army, and on the 1st and 2d of May a carpenter was engaged in replacing these stalls; that there was a safe and some desks in the premises, but they belonged neither to the Salvation Army nor the defendant, having been left on the premises by a former tenant; that there were also some beds and mattresses there that belonged to this Mrs. Corgan, who was upon the premises when defendant took possession and remained there after the defendant and the Salvation Army left; that after the Salvation Army left some men who had been there remained and did some work for this Mrs. Corgan. The carpenter who replaced these stalls testified that he was employed by the Salvation Army to do that work and finished it on the 2d of May. This carpenter was engaged by the Salvation Army on the 25th of April to replace the stalls, and on the same day the employés of the Salvation Army were ordered to have everything taken out of the premises before the 1st of May.

The plaintiff testified that when he went to the premises on the 1st of May he saw bales of rags or pressed bales and furniture on the premises; that on the 2d of May he found 17 bales of this stuff there, that consisted of papers and rags, and that a large number of mattresses were on the second floor; that he also saw 24 made-up bales and an iron safe there, and a large number of persons were about the building; that on May 4th he again went to the premises and saw some furniture there; that some of the bales had been removed, but some still remained; that a Mrs. Corgan, who had been upon the premises as caretaker for tenants in possession of the property before the defendant's time, and had continued in possession during the term of this lease, some time before the 1st of May, had an interview with the plaintiff, who asked him what she should do after the 1st of May; that the plaintiff said that, if the premises were not let, some one would have to stay there, or the boys would tear it to pieces; that she (Mrs. Corgan) had better stay if the premises were not rented and look after them as caretaker; that she remained in possession of the premises, and was there at the time of the trial. On the 4th day of May the plaintiff notified the defendant that he elected to continue the lease for a further term of one year from May 1, 1908. Upon this testimony the plaintiff claimed that the defendant held over after the termination of the lease, and was therefore liable for the rent of the premises for one year from the 1st of May, 1908. The lease contained a clause which permitted the plaintiff, in case the demised premises or any part thereof became vacant, to re-enter the same.

I do not think that this evidence justified the finding of the trial judge that the defendant held over and continued in possession of the premises after the termination of the lease. There is no question about the rule that, where a tenant holds over after the expiration of

his term, the law implies an agreement for a new lease of the premises for another year upon the terms of the prior lease; but what is essential to be shown is a continued holding of the premises by the tenant after the expiration of the term. In this case the evidence is undisputed that the defendant had not been in the actual possession of the premises·for months prior to the termination of the lease. The sublease to the Salvation Army was apparently made with the consent of the plaintiff, and the Salvation Army thus became a subtenant. Assuming that the possession of the subtenant would be the possession of the defendant, which would justify the inference of a new lease, I think the evidence is substantially uncontradicted that the occupation by the Salvation Army terminated on or before the 1st of May; the Salvation Army leaving upon the premises certain property, some of which it subsequently removed, and some of which remained the property of this caretaker, who continued in possession of the premises. During all this period this caretaker seems to have been in the actual possession of the premises, holding the keys and maintaining it for the various tenants and subtenants. When the Salvation Army moved out, she still continued in possession of the premises, but this time under an agreement with the plaintiff by which she was to continue after the termination of the lease as caretaker for him. I do not think, under the circumstances, either the defendant or the Salvation Army can be said to have held over and remained in possession after the termination of the lease. The mere fact that some personal property of the Salvation Army remained on the premises when his caretaker was in actual possession with the keys of the premises would prevent the Salvation Army or the defendant from being considered as trespassers. The burden was upon the plaintiff to establish the fact that the tenant did remain in possession, and such possession must be a continuance of the possession acquired under the lease. It is quite evident that neither the defendant nor the Salvation Army intended to retain possession of the premises, and the only thing from which possession is sought to be proved is the fact that some property of the subtenant remained on the premises after the termination of the lease. I do not think that this is holding possession of the property within the lease, so as to entitle the landlord to hold the tenant. See Excelsior Steam Power Co. v. Halstead, 5 App. Div. 124, 39 N. Y. Supp. 43; Frost v. Akron Iron Works, 1 App. Div. 449, 37 N. Y. Supp. 374.

To entitle a landlord to claim an implied lease for another year on account of a tenant's holding over, the possession of the tenant must be an actual possession of the property as against the landlord, so that the tenant would by virtue of his possession become a trespasser. In this case the actual custody of the property was in this caretaker, who, after the 1st of May, under the authority of the plaintiff, had the care and custody of the property for him. Certainly neither the defendant nor the Salvation Army could have ejected her. There is nothing in the evidence to show that either the defendant or its subtenant remained in actual possession and control of the property subsequent to May 1st, or was in actual occupation of the property on

May 4th, when the notice was given, to justify the implication of a new lease for another year.

I think, therefore, the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN and LAUGHLIN, JJ., concur.

CLARKE, J. (dissenting). The rules of law governing the rights of landlords and the liabilities of tenants in cases of "holding over" are well settled and do not need restatement. A careful review of the cases is found in Oussani v. Thompson, 19 Misc. Rep. 524, 43 N. Y. Supp. 1061. Where the tenant fails to deliver possession, the law implies an agreement on his part to hold over for a year upon the terms of the prior lease. It lies with the landlord to exercise the option, and not with the tenant. Schuyler v. Smith, 51 N. Y. 309, 10 Am. Rep. 609. The fact that the actual holding over was by a subtenant of the lessees does not affect the rule. Haynes v. Aldrich, 133 N. Y. 287, 31 N. E. 94, 28 Am. St. Rep. 636, where Finch, J., said:

"The appellant does not deny the rule [that a holding over amounts to a lease for another year], but seeks to qualify it, so as to mean that it is only where the tenant holds over voluntarily and for his own convenience that the landlord's right arises, and that it does not so arise when the tenant holds over involuntarily, not for his own convenience, but because he cannot help it. I am averse to any such qualifications."

As there is no dispute as to the law, the question is reduced to one of fact. There was sufficient evidence to sustain the judgment of the trial court. There was some conflict as to details, and questions of credibility were presented peculiarly within the province of the trier of the facts, who had the witnesses before him, for determination. In the opinion of the Municipal Court justice those questions have been carefully considered and resolved in favor of the plaintiff. His judgment has been affirmed by the Appellate Term. We should not reverse upon the facts under such circumstances, unless there was no evidence to sustain the judgment, or said judgment was clearly against the weight of the evidence.

The determination of the Appellate Term should be affirmed, with costs and disbursements to the respondent.

HOUGHTON, J., concurs.