MOTT PIPE & SUPPLY CORP., Plaintiff, *v.* BLUE RIDGE COAL CORP., Defendant.

Municipal Court of the City of New York, Borough of The Bronx, March 16, 1955.

*R. Harold Paltrow* for plaintiff.

*Theodore Ornstein* and *Harold B. Lawrence* for defendant.

DONOGHUE, J.   A decision as prescribed in a Supreme Court action tried without a jury is, fortunately, not required of us who labor in the Municipal Court (N. Y. City Mun. Ct. Code, § 125). The number and type of actions neither permit nor require that rationalizations be written.   Yet occasionally cases are presented to us of such complexity or significance that some statement should be made, to show what findings and conclusions were made and how they were reached.   Of that description is this action whereby plaintiff, lessor, seeks to hold defendant, lessee, as a holdover tenant.

The demised premises extends 155 feet along the Harlem River, runs easterly to East 135th Street, comprises about 16,000 square feet and is a portion of the area which plaintiff, Mott Pipe, leased from New York Central Railroad Company in 1934. The lease between plaintiff and defendant, Blue Ridge, made the same year, provided for the use of property in the sale of coal and other fuel.   In June, 1954, Blue Ridge, after notice of cancellation pursuant to the terms of its lease, vacated, so it maintains, and counterclaims for the return of a deposit of $250. Mott Pipe contends that so much of tenant's property was left on the premises that it is justified in treating Blue Ridge as a holdover tenant and demanding, as it does by this action, $700 as rent for July and August, 1954.

In theory, landlord's position is supported by authority.   If a tenant for a term of years, or for a year, holds over after expiration of a term, the landlord has the option to hold him as tenant for another year.   (Real Property Law, § 229; *Schuyler* v. *Smith,* 51 N. Y. 309.)   The landlord's right is not based on contract but is a penalty imposed by law on the trespassing tenant and it is immaterial that tenant, before expiration of the term, had given notice that he would not renew the lease.   The tenant holds over at his peril.   (3 New York Law of Landlord & Tenant, § 1056; *Haynes* v. *Aldrich,* 133 N. Y. 287.)

But as fact and legal conclusion, has this tenant held over? Are all the things remaining on the premises the tenant's?   They

are, predominantly, trade fixtures and in all the reported cases some person, usually two persons, claimed the fixture, but the novel twist to this case is that neither party claims them. The premises had been used as a coal yard by the tenant prior to Blue Ridge but it seems that now the coal business is less than flourishing. Nobody seeks a coal yard and neither of these parties wants this coal business equipment.

The items of property which plaintiff charges defendant left on the premises are impressive in number and significance, thus: (1) Office safe. (2) Two desks. (3) Scale, small, in office. (4) Scale, exterior, for weighing truck loads. (5) Concrete base of scale. (6) Oil pump of about ten horsepower capacity. (7) Brick pump house. (8) Storage shed adjacent to pump house. (9) Shed over exterior scale. (10) Piping over pump house. (11) Oil storage tank of about 10,000 gallon capacity. (12) Two coal hoppers. (13) Steel column once part of coal hopper. (14) Crib work (called '' cribbing '' by the parties) on dock. (15) Bulkheads on end of dock. (16) Hatch board racks (bins).

The proof adduced at the trial, and accepted, eliminates certain items and helps to define and divide the others. The tenant took away the desks. The concrete base for the large scale was stipulated in the lease '' to remain on the property and not to be removed by the tenant.'' Likewise does the lease provide for the two hoppers. They are therein mentioned as part of the demised premises. The fact that tenant renewed the lumber of which the hoppers was constructed, also substituted steel for wood supporting columns, does not affect the ownership. Tenant was required, by the lease, to repair this equipment and to keep it in good condition. Tenant took down one hopper but left standing one of its steel columns. It was a hopper that tenant had erected and the steel column also should have been removed.

The storage shed, the crib work on the dock, the bulkheads and the hatch board racks or bins were on the premises when Blue Ridge took possession, apparently having been installed by a previous tenant. Blue Ridge used this equipment but such use did not make it their property. When the term ends the tenant loses title to, or the right to remove, trade fixtures that he fails to take out and they then become the landlord's property, if landlord, unlike Mott Pipe, wishes to possess them. Ownership cannot remain suspended awaiting the entry of a new tenant. That would seem '' elementary '' but like other '' elementary '' matters the search for a case goes far, to England in this instance

where, in *Ex Parte Baroness Willoughby D'Eresby; Re Thomas* (44 Law Times 781) it was held that fixtures left by former tenant are part of the premises demised to a new tenant and do not become the new tenant's property.

The brick pump house, and oil pump, the piping over the pump house and the storage tank are admitted by tenant to have been left on the premises. The admission is taken as implying that they are tenant's property and should have been removed. Whether or not such implication is intended the court finds to that effect. In addition, court finds that the safe, the small scale in the office and the exterior scale and the shed over the scale are tenant's property and should have been removed. Thus is the issue narrowed to whether the leaving of those eight items upon the premises constitutes a holding over.

Sufficient they are to take the situation out of the " matter of law " zone. They are less than that which was found, as a matter of law, to constitute a holding over (*Haynes* v. *Aldrich, supra*; *Vosburgh* v. *Corn,* 23 App. Div. 147) and more than that which was found not to spell out a holding over (*Myers* v. *Beakes Dairy Co.,* 132 App. Div. 710). It is a question of fact whether Blue Ridge is a holdover tenant.

That " a question of fact," is " to be determined by taking into consideration the nature of the property leased; the amount paid as rent, the value of the real property   *   *   *   left on the leased premises, the intent with which it was left, and all the other facts and circumstances surrounding the transaction " wrote Hubbs, J., in *Canfield* v. *Harris & Co.* (222 App. Div. 326, 329, affd. 248 N. Y. 541).

The safe was found on the premises by Blue Ridge when it entered. It is a movable article of personalty four by six by two feet. Blue Ridge appropriated it to their use and, unlike fixtures attached by a former tenant, it became their property. No combination was known by which it could be locked, the door being opened and closed by a handle, and it was valueless. The small scale, in the office, gave a reading of the weight registered by the exterior scale to which it was attached by rods. This scale, mounted on a concrete form, weighed the loaded coal trucks and must have been at least ten feet by twenty feet; value new, installed, $2,500, value now, $250. The lease stipulated that scale was tenant's property, which it could remove, but not so the concrete base. The shed over the scale was a corrugated iron extension of the roof of the office building. The brick pump house was a small structure, about eight feet by fifteen feet and six feet in height, on a concrete foundation. Within it were the

oil pump, pipes and wiring, and some pipes were mounted on the roof. The tank, of a diameter of about eight feet and length about eighteen feet, was sunk into the ground, the top of it being about three feet below ground level. Its value, new, was $700, now nil. The size of the pump was not brought out but it necessarily was less than the eight feet by fifteen feet brick structure that housed it. The pump's value was stated to be $125. A pipe between pump house and tank was mentioned but its length, diameter and value were not stated. Probably it was negligible.

Tenant removed all its merchandise and equipment other than the eight items which court finds were left by it. Among those other items were some 2,000 tons of coal valued at about $25,000, a caterpillar crane valued at $15,000 and timber valued at about $15,000.

The demised area has irregular courses, except the 150 feet along the Harlem River, but it comprises at least 16,000 square feet. The on-ground space occupied by the fixtures Blue Ridge should have removed is estimated by the court at less than 600 square feet. No valuation of the demised area was evidenced. The rental for last year of the term apparently was $4,200 a year. The total fair value of the fixtures Blue Ridge left on the premises is about $375.

But dimensions and value, even if more accurate than the foregoing approximations, fail to furnish the court with an answer forthwith. The answer cannot be achieved by slide rule and several elements press for deliberation.

An expert testified about the reasonable charge for removing all the sixteen items complained of by lessor but the breakdown is insufficiently detailed to fix the reasonable charge to remove the items found by the court to be tenant's property. However, it is safe to say that it would exceed $1,000, the witness having testified to $600 for demolishing and removing the pump house and $300 to remove the scale and refill the pit.

The lessor is being wronged, yet is this the remedy that the law should allow, to hold tenant for a year, at a rental of some $4,200? It is a fiction to deem the lessee as in possession when actually it has departed, although lessor refused to recognize a surrender. And it is a penalty, as the authorities state, to so hold a tenant. Should fiction be indulged and the penalty allowed under the facts as found here right the wrong done the lessor? By the terms of the major lease between New York Central Railroad and Mott Pipe, the terms and conditions of which are incorporated, by reference, into the sublease to Blue Ridge, it is agreed, " All buildings, structures, improvements

and other property erected or placed by the lessee upon the demised premises which are not removed at the expiration of the term shall thereupon be and become the property of the lessor and/or may be removed or demolished by it at the sole cost and expense of the lessee, and the lessee hereby covenants and agrees to pay to the lessor, upon demand, the entire cost of such removal or demolition." Thus alternative rights are expressly provided by the agreement of the parties and neither right is an option to hold the tenant for another year, or any period. *Expressio unius est exclusio alterius* (2 Clark on New York Law of Contracts, § 834).

Furthermore, even lacking such provision, the landlord has a common-law right to recover the expenses for removing the tenant's goods on the theory of implied contract. (32 Am. Jur., Landlord & Tenant, § 802; 64 L. R. A. 652, 662; 23 A. L. R. 2d 655–657: *Congregation Anshe Sefard* v. *Title Guar. & Trust Co.*, 291 N. Y. 35.)

In the *Canfield* v. *Harris* case (*supra*), the premises demised were a gasoline station and lessee left thereon an automobile greasing rack, two 1,000-gallon tanks buried in the ground and two gasoline pumps bolted on concrete foundations. Appellate Division reversed the trial court in construing the situation a holdover as a matter of law and Court of Appeals affirmed. (248 N. Y. 541.) Relatively the area taken up there by the fixtures left on the premises was far greater than in the instant case where the on-ground space occupied by the fixtures does not exceed 600 square feet out of a demised area of about 16,000 square feet, or less than 4%. In *Ernst* v. *Holzner* (130 N. Y. S. 442), where the court found tenant was not a holdover, 90% in bulk and 95%, in value, of tenant's property had been removed. In the instant case the percentage of bulk cannot be ascertained but the value of the things remaining is less than 1% of the value of the coal, crane and timber alone of the tenant's property that was removed.

The tendency, the direction of the law's movement, should be recognized. " The tendency of late years is evidently to apply a more elastic rule and deprive the landlord of his option to hold the tenant for another year's lease unless a continuation of the tenant's possession within the terms of the expired lease can be fairly implied." That was written by SPIEGELBERG, Justice of the Municipal Court, in an opinion quoted in full by the Appellate Term in affirmance. It was written in 1911. (*Ernst* v. *Holzner, supra*, p. 445.)

The conclusion is that not sufficient is presented here to spell out a holding over and the complaint is dismissed, without prejudice to whatever other remedy or action the plaintiff may be advised to pursue, and the counterclaim is dismissed on the merits, the defendant having failed to show compliance on its part with the terms of the lease.