Ronald **COMEDY**, Appellant,

v.

**James B. VITO**, Appellee.

No. 84–1153.

District of Columbia Court of Appeals.
Argued April 24, 1985.
Decided May 16, 1985.

Dudley H. Chapman, Washington, D.C., for appellant.

Anne M. Magruder, Washington, D.C., for appellee.

Before NEBEKER, MACK and NEWMAN, Associate Judges.

MACK, Associate Judge:

This is an action by a landlord against a former tenant for two months' holdover rent, based on the tenant's alleged incomplete vacation of the rental premises, and the failure of the tenant's subtenant to vacate. The trial court granted partial relief, and we reverse.

I.

Appellant Ronald Comedy appeals a decision of the trial court holding him liable to appellee James B. Vito as a holdover tenant for the full amount of one month's rent ($2100) and for that portion of a second month's rent ($850) that is attributable to Comedy's former subtenant, Wilbur Hughes. Comedy and Vito had originally entered into a written lease for a two-story building at 226 Massachusetts Ave. N.E. in 1973. The term of the lease expired in 1976, and Comedy's tenancy thereafter was on a month-to-month basis. In 1980, Comedy rented part of the premises to a subtenant, Wilbur Hughes. Comedy decided to vacate the property as of the end of February, 1984, and he gave the landlord notice of this decision on January 4, 1984. He orally notified his subtenant in December, 1983 that they would both have to vacate the premises by the end of February, 1984, and he later sent him a copy of the January 4 termination notice he had sent to the landlord. Comedy also recommended his subtenant to the landlord as a possible prime tenant for the property. The subtenant and the landlord discussed this possibility a half-dozen times in January and February of 1984, but the subtenant ultimately decided that the expense of carrying the entire lease would be too great. Prior to the date set for Comedy's vacation of the premises, the landlord was able to secure another prime tenant, Reed. The subtenant, Hughes, expressed his interest in remaining as a subtenant; the landlord did not tell Hughes that he was obliged to vacate, but instead gave him Reed's name, and Hughes ultimately became Reed's subtenant. Hughes told Comedy that the landlord had consented to allow Hughes to remain on the premises and to negotiate a sublease with the new prime tenant. Accordingly, Comedy took no steps to evict him.

Comedy vacated the property as scheduled at the end of February. He had had

some discussion with both Hughes and Reed about selling an exterior sign affixed to the building; although Hughes declined to buy the sign, Comedy left it in place pending Reed's decision. Reed ultimately decided against purchasing the sign, and it was removed on April 1. Both Comedy and Hughes testified that the interior premises were cleaned immediately after Comedy moved out. The landlord testified that when he first entered the building at the beginning of March he found "debris": paper, wood, a galvanized trough, and a glass cabinet. The landlord acknowledged that the trough was a fixture, however, and in response to Comedy's contention that the cabinet did not belong to him, the landlord admitted the possibility that the cabinet had belonged to a prior tenant.

Hughes testified that after the landlord told him he could remain on the premises, he offered him rent for March, 1984. The landlord testified that even if Hughes had offered him rent, he would have declined to take it because Hughes was "not [his] tenant." He told Hughes to negotiate instead with Reed. The landlord and Reed had originally agreed that Reed's lease would commence on April 1. The lease was subsequently written to commence on May 1; according to the landlord this change was made necessary by Comedy's failure to vacate the premises completely by virtue of the exterior sign, the interior cabinet, and the "debris." Hughes paid no rent for March or April, 1984.

The landlord brought this action against Comedy to recover the full amount of rent for March and April, 1984, a total of $4200. In a bench opinion following trial of the action, the court ruled that the landlord "was proper in assuming that when he visited in March the premises had not been completely vacated by Mr. Comedy." Accordingly, he awarded the full amount of the March rent, $2100, to the landlord. With regard to the claim for April rent, the court held that "the fact is that there was no lease and Mr. Comedy had an obligation

with his subtenant, Mr. Hughes, to collect rent from him and pay it to ... Mr. Vito." The court therefore awarded Vito $850, the approximate amount of Hughes' monthly rent, for the April, 1984 claim. For the following reasons, both of these rulings were in error.

## II.

With regard to the trial court's finding on the March rent, any implicit conclusion by the court that by his failure to remove the exterior sign and the glass cabinet, Comedy had interfered with the landlord's use of the property to an extent sufficient to transform Comedy into a hold-over tenant, is clearly erroneous.[1]

"A holding over does not result from the leaving of property which is practically worthless or which is left merely for the convenience of the incoming tenant, nor does it result from the leaving of a small amount of the property on the premises without any intention of retaining or enjoying possession of the premises."

*Beck v. Troiano, supra* note 1, 138 A.2d at 493 (citation omitted). The court itself noted that the landlord could easily have removed the cabinet, and there was no testimony that the exterior sign had in any way prevented the landlord from taking possession of, and reletting, the property. The interior premises were vacant, aside from the cabinet, and the landlord's assertion that the empty cabinet and the exterior sign left him with some doubt as to whether Comedy had actually vacated is neither credible nor legally significant. "It is a fiction to deem the lessee as in possession when actually it has departed, although lessor refused to recognize a surrender." *Mott Pipe & Supply Corp. v. Blue Ridge Coal Corp.*, 208 Misc. 601, 606, 146 N.Y. S.2d 607, 612 (1955). When chattels left on the property by a former tenant interfere with the landlord's use of the property, the landlord is entitled to recover the cost of removal. RESTATEMENT (SECOND) OF PROPERTY § 12.3 comment 1 (1977). The landlord therefore could have removed the sign and

---

1. "Whether the failure to remove [the tenant's property] constituted a holding over by the ten- ant, [is] a question of fact." *Beck v. Troiano*, 138 A.2d 492, 493 (D.C.1958).

would have been entitled to recover the cost of doing so under a theory of implied contract. *See Mott, supra.* There was no testimony that the landlord asked Comedy to remove the sign. By his inaction, the landlord may not be permitted to reap a windfall of $2100 from a tenant who had given the required notice and had relinquished possession of the premises.

■■■ As to the court's finding that even after he had removed the sign, Comedy remained liable to the landlord for the April rent attributable to the portion of the premises occupied by his subtenant, this conclusion is in error as a matter of law. Comedy's arrangement with the landlord was a "verbal hiring by the month" defined by statute as a "tenancy by sufferance." D.C.Code § 45–220 (1981). This "statutory tenancy by sufferance is entirely different from the common-law tenancy by sufferance," *Cavalier Apartments Corp. v. McMullen,* 153 A.2d 642 (1959),[2] and is similar to the common law tenancy at will. When a common law tenancy at will is sublet, the tenancy is terminable on the date the landlord learns of the attempted sublease, unless the subtenant and the landlord agree otherwise; if the landlord consents, however, "a new tenancy at will is created." RESTATEMENT (SECOND) OF PROPERTY, *supra* § 1.6 comment d; *see id.* at § 15.1 comment b. A common law tenancy at will is created even if the landlord allows the subtenant to occupy the premises rent-free, *id.* § 1.6 illus. 2. Whether we deem the landlord's acquiescence in the subtenant's remaining on the premises following the expiration of Comedy's tenancy to have created an additional estate or merely to have accorded the subtenant the status of a permissive user or licensee, *see Smith v. Town Center Management Corp.,* 329 A.2d 779, 780 (D.C.1974); *Shapiro v. Christopher,* 90 U.S.App.D.C. 114, 117–18, 195 F.2d 785, 788–89 (1952), in either case that acquiescence divests Comedy of any responsibility for payment of rent for space occupied by his former subtenant.[3] The landlord's testimony that he would have refused to accept any rent proffered by the subtenant weighs heavily in our conclusion that any loss to the landlord was purely of his own making.

*Reversed.*

---

**2.** "At common law a tenant at (or by) sufferance had no estate in the premises, was not in privity with his landlord, could not maintain an action of trespass against the landlord, was entitled to no notice to quit, and was not liable to pay rent; he had little more than the right to insist he was not a trespasser." *Hampton v. Mott Motors, Inc.,* 32 A.2d 247, 248 (D.C.1943). Despite the statute's definition of a "verbal hiring by the month" as a tenancy by sufferance, Comedy here was "nevertheless a monthly tenant, for he h[e]ld [the premises] 'by the month.'" *Boss v.*

*Hagan,* 49 App.D.C. 106, 108, 261 Fed. 254, 256 (1919).

**3.** Vito's consent distinguishes this case from *Goodwin v. Humbert,* 216 App.Div. 295, 296, 215 N.Y.S. 20, 21 (1926), *app. dism'd,* 244 N.Y. 584, 155 N.E. 906 (1927), and from *Sullivan v. George Ringler & Co.,* 59 App.Div. 184, 69 N.Y.S. 38 (1901), where lessors who objected to the continued occupancy by a subtenant were held entitled to elect to hold their prime tenants to holdover terms.